[Civ. No. 4013.  Second Appellate District, Division One.—July 11, 1924.]

## PETER PIKE, Appellant, v. JAMES PSIHOGIOS, Respondent.

[1] SALES—SALE OF POOL-HALL AND LEASE—DEPOSIT FROM SUBTENANT IN HANDS OF SELLER—RIGHT OF BUYER TO DEPOSIT—EVIDENCE.—A buyer of a pool-hall, together with the fixtures and furniture contained therein, and the lease of the premises, for an agreed price, having knowledge of a lease, made by the seller prior to the sale, of a part of said premises to a subtenant, and having an opportunity to examine the latter lease under which there has been paid by the subtenant to the seller a deposit to secure the faithful performance of its terms and to apply, in the event of performance, to the last three months' rent, cannot recover such deposit from the seller after agreeing to the terms of the sale, where nothing was said or done by either the buyer or the seller regarding said deposit at the time they agreed upon the sale price; and said buyer, having failed to make known his claim to said deposit at the time he agreed to the terms of the sale, must be held to have agreed to accept the property in the condition in which it was at the time of its delivery to him by the seller, and for the price agreed upon at the time of delivery.

[2] ID.—TITLE TO PART OF PROPERTY—ALLEGED DEFECT IN—DAMAGES—EVIDENCE.—In an action by a seller to recover from the buyer the purchase price of a pool-hall and the fixtures and furniture contained therein, where it was shown that the seller held a bar constituting a part of said fixtures and furniture under a conditional sale contract, the conditions of which had never been performed by the seller, and that the conditional vendor, up to the time of the trial, had not taken possession of said bar, nor had the buyer paid to the conditional vendor anything on account of the purchase price of said bar, and that the buyer went into the possession of said bar immediately upon the consummation of the sale and had the quiet and peaceable possession thereof ever since its purchase, the buyer, therefore, had not, at the time of said trial, sustained any damage, and was not entitled to any recovery against the seller on account of his defect in title to said bar.

[3] REAL ESTATE BROKER'S ACT — SALE OF PERSONAL PROPERTY AND LEASE OF REAL PROPERTY—COMMISSIONS—LICENSE UNNECESSARY—

---

2.  See 8 Cal. Jur. 820; 8 R. C. L. 421.

3.  Effect of failure of real estate broker to obtain license on right to commissions, notes, 5 Ann. Cas. 897; Ann. Cas. 1912D, 378; 1 L. R. A. (N. S.) 1159.  See, also, 4 Cal. Jur. 551; 4 R. C. L. 301.

RIGHT OF ACTION—ASSIGNMENT.—It is not necessary for a party to obtain a real estate broker's license under section 2 of chapter 605, Statutes of California, page 1252, to perform services in acting as agent of the seller in the sale of personal property, and of a lease to real property; and such party has the right to maintain an action against the seller for such services and can also assign his cause of action.

(1) 35 **C. J.**, p. 999, sec. 106.    (2) 35 **Cyc.**, p. 418.    (3) 9 **C. J.**, p. 513, sec. 15.

APPEAL from a judgment of the Superior Court of Imperial County. M. W. Conkling, Judge. Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

A. L. Hubbell for Appellant.

F. H. Smith for Respondent.

CURTIS, J.—This action was instituted to recover the purchase price of certain personal property sold by plaintiff to defendant, also to foreclose a chattel mortgage given to plaintiff by defendant. The defendant set up as a defense to said action certain so-called affirmative defenses and counterclaims. Judgment was rendered in favor of plaintiff upon the two causes of action set out in his complaint, and the court also rendered judgment in favor of the defendant upon four of the counterclaims set out in his answer, and deducted the amount found due on these four counterclaims from the amount found due plaintiff upon his two causes of action, and rendered judgment in favor of plaintiff for the difference. Plaintiff concedes that the action of the trial court in its finding upon one of said counterclaims was proper, but has appealed from that portion of said judgment in defendant's favor, upon the other three counterclaims, and contends that the evidence was not sufficient to justify the court in finding in defendant's favor upon these three counterclaims.

The three counterclaims, the allowance of which is objected to by plaintiff on this appeal, are designated as follows in defendant's answer: Third Affirmative Defense and Counterclaim, Defendant's Fifth Defense; and Sixth Af-

firmative Defense and Counterclaim. We will discuss them in the order named.

[1] *Third Affirmative Defense and Counterclaim:* Plaintiff sold to defendant a certain pool-hall in the city of Calexico, together with the fixtures and furniture contained therein, and the lease of the building in which the business was carried on. The consideration thereof was $15,000. Prior to said sale, plaintiff had leased to a subtenant, to be used as a barber-shop, a portion of the building covered by his lease. This fact was well known to defendant at the time of the purchase, and a copy of the lease from the plaintiff to the subtenant, assigned by plaintiff to defendant, in accordance with the agreement between the parties, was, at the time the sale was agreed upon, placed in escrow with a bill of sale of the property sold, and other papers necessary to consummate the sale. This lease in favor of the subtenant contained the following provision: "It is agreed at the time of the execution of this lease that the sum of $300.00 shall be deposited with said first party as a guarantee of faithful performance of the terms and conditions of this lease by said second party. In the event the said second party complies with the terms and conditions of this lease, then said deposit of $300.00 shall apply as payments of the last three months of said term, otherwise it shall be forfeited to said first party as liquidated damages for a breach of this agreement." Under this provision of the lease, there had been paid by the subtenant to the plaintiff, at the time of the execution of the lease to the subtenant, the sum of $300. Defendant by this counterclaim now seeks to compel plaintiff to pay this sum to him. The claim of defendant is resisted on the part of the plaintiff, upon the ground that the property sold, including the interest of plaintiff in the lease to the subtenant, was sold to the defendant for an agreed price, and as nothing was said or done regarding this sum of $300, it must be assumed that it was taken into consideration by the parties, at the time they agreed upon the price, and was included in and covered by the purchase price. As we have already seen, defendant knew of the lease to the subtenant, and either knew the terms thereof, or at least had ample opportunity to acquire this information. In his agreement to purchase the property, he had agreed to accept it subject to the terms of the lease to the subtenant. He agreed to pay for

this property a certain fixed sum. If he expected this pur-
chase price to be reduced to the extent of $300 on account
of the above provision in the lease and the deposit of money
thereunder with the plaintiff, then, in all fairness, he should
have made known his claim at the time he agreed to the
terms of the sale. Failing to do so, he must be held to have
agreed to accept the property in the condition in which it
was at the time of its delivery to him by the plaintiff, and
for the price agreed upon at the time of delivery. His claim
that he did not know of this provision in the lease until some
eight days after the sale was consummated and the property
delivered to him does not help his situation. He not only
had every opportunity to examine the lease and know of its
terms, but it was his duty to do so before he agreed to ac-
cept it as a part of the property he was purchasing from
the plaintiff. His failure to do so was gross negligence on
his part and if anyone is to suffer on account of this negli-
gence, it should be defendant rather than the plaintiff. This
is especially true, when we take into consideration the fact
that the evidence shows that the plaintiff was perfectly frank
and honest in the whole transaction, and did nothing to con-
ceal from the defendant any information to which he was
entitled, or to prevent him from learning all the facts re-
garding the property he was purchasing. In our opinion,
the evidence fails to sustain the finding of the court in
defendant's favor upon this counterclaim.

*Defendant's Fifth Defense* was based upon the following
facts: The furniture and the fixtures, sold by plaintiff to
defendant, included a soft-drink bar. The evidence, how-
ever, shows that plaintiff was not the absolute owner of this
bar, but held it under a conditional sale from the Maier
Brewing Company. The conditions set forth in this contract
of sale had never been performed by the plaintiff. The
brewing company, up to the time of the trial, however, had
not taken possession of said bar, nor had the defendant ever
paid to the company anything on account of the purchase price
of said bar. The defendant went into possession of said bar
immediately upon the consummation of said sale, and has
had the quiet and peaceable possession thereof ever since its
purchase. **[2]** Defendant, therefore, had not, at the time
of said trial, sustained any damage, and was not entitled to
any recovery against plaintiff on account of his defect of

title to said bar. "To recover damages for defect of title to personal property it must be alleged and shown that plaintiff has suffered damages thereby. The rule is the same where the claim for damages is based on breach of agreement to furnish good title as it is where the action is for breach of warranty of title. Indeed, an agreement to furnish a good title followed by a bill of sale of the property is in effect a warranty of title. This rule that the vendee cannot recover on such warranty while still retaining undisputed possession of the property has been frequently recognized in this state." (*Barnum* v. *Cochrane,* 143 Cal. 642–645 [77 Pac. 656, 657].)

*Sixth Affirmative Defense and Counterclaim:* This cause of action was based upon a claim assigned to defendant by one A. Katugios. The court found that Katugios acted as agent for the plaintiff in the sale of said pool-room, furniture, and lease to defendant for the sum of $15,000, and that plaintiff agreed to pay him a commission of five per cent, or $750, for said services. While the evidence is conflicting, we think it is sufficient to sustain such finding. [3] It is admitted that Katugios had no license to act as a real estate broker as required by section 2 of chapter 605 of the Statutes of California, 1919, page 1252. Plaintiff, therefore, claims that no recovery can be had for his services in effecting such sale. In support of this claim plaintiff relies upon said section 2 and section 20 of said act. Section 2 enumerates the acts which may be performed only by a duly authorized and licensed real estate broker or salesman, and section 20 provides that no action shall be brought or maintained by any such person for the collection of compensation for the performance of any of the acts enumerated in said section 2, without alleging and proving that such person was a duly licensed real estate broker or salesman. The services on account of which it was sought by said counterclaim to recover were performed by Katugios in acting as agent of the plaintiff in the sale of personal property and of a lease to real property. It will be observed that section 2 of said act, in its enumeration of the acts which only a duly licensed real estate broker may perform, does not specify either the sale of personal property or the sale of a lease to real property. It was, therefore, not necessary for Katugios to obtain a license under said section 2 to perform the services rendered

by him to the plaintiff, and which forms the basis of this counterclaim. Katugios, therefore, had a good cause of action and the right to maintain the same against the plaintiff for his said services, and could, of course, assign it to the defendant. The action of the court, therefore, in awarding the defendant judgment on this counterclaim was proper and legal, and the judgment herein, in so far as it relates to defendant's Sixth Affirmative Defense and Counterclaim, is affirmed.

On account of the error of the court in awarding judgment in favor of the defendant on his Third Affirmative Defense and Counterclaim, and on Defendant's Fifth Defense, as set out in his answer, that portion of said judgment in defendant's favor upon said two last-named counterclaims is reversed and the case is remanded to the trial court, with directions that a new trial be had, but only as to the issues involved in Defendant's Third Affirmative Defense and Counterclaim and in Defendant's Fifth Defense.

Conrey, P. J., concurred.

Houser, J., dissented.

A petition by appellant for a rehearing of this cause was denied by the district court of appeal on August 8, 1924, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 8, 1924.

All the Justices concurred.