[Civ. No. 6375. First Appellate District, Division Two.—October 26, 1928.]

J. T. NITTLER et al., Respondents, v. CONTINENTAL CASUALTY COMPANY (a Corporation), Appellant.

Redman & Alexander for Appellant.

Stanley R. Sterne for Respondents.

Joseph G. DeForest, *Amicus Curiae.*

NOURSE, J.—Plaintiffs sued to recover damages for the breach of R. C. McKinney, a licensed real estate broker, and joined as a party defendant the Continental Casualty Company, the surety upon the bond of McKinney under the Real Estate Brokers' Act (Stats. 1919, p. 1252). The cause was consolidated for trial with that of *Carroll* v. *McKinney*

*et al.*, an action brought to recover for a similar breach, and which upon the submission of this cause upon the appeal was dismissed upon the stipulation of the parties. The cause was tried before the court without a jury and judgment was rendered in favor of the Nittlers and against the defendant McKinney and the Continental Casualty Company in the sum of $1,058 and against the defendant McKinney in the additional sum of $262. From this judgment the defendant Continental Casualty Company has appealed upon a typewritten record.

The complaint alleged that on the nineteenth day of March, 1927, the defendant McKinney, while acting as a licensed real estate broker, received for plaintiffs the sum of $1,320 paid to him as the purchase price of a gasoline service station sold by plaintiffs to the purchasers by and through the defendant McKinney acting as a real estate broker; that on the twenty-eighth day of March, 1927, plaintiffs made demand upon McKinney to pay over to them the said sum of $1,320, but that McKinney refused to pay over the same or any portion thereof and appropriated the whole sum to his own use; that on the fourteenth day of March, 1927, McKinney and the Continental Casualty Company executed a certain broker's bond under the terms of the Real Estate Brokers' Act, the obligation of which was that the broker would faithfully perform every undertaking entered into by him as a licensed real estate broker; that said bond expressly inured to the benefit of any person injured by the failure of the broker to perform his duties and gave a right of action to such person against the surety for the recovery of damages sustained by the failure or omission of the broker to perform his duties or any of them, or to comply with the provisions of the act; that the said bond was filed with the real estate commissioner and in pursuance thereof McKinney received his license as a real estate broker under said act.

The Continental Casualty Company demurred genererally upon the ground that the complaint was insufficient because the sale alleged to have been made by McKinney was not a real estate transaction requiring a real estate broker's license, and because the complaint did not allege that Mc-Kinney was acting for compensation in that transaction. On the first point the argument is that because the complaint alleges that the transaction consisted of the sale of a gaso-

line service station we must assume that it did not include any of the transactions referred to in section 2 of the Real Estate Brokers' Act as amended in 1925 (Deering's Gen. Laws, Act 112), and which defines a real estate broker as: "a person—who, for a compensation, sells, or offers for sale, buys, or offers to buy, or negotiates the purchase or sale or exchange of real estate, or who, for compensation, negotiates loans on real estate, leases or offers to lease, or negotiates the sale, purchase, or exchange of leases, rents, or places for rent, or collects rent from real estate, or improvements thereon, for others, as a whole or partial vocation.'' There is nothing on the face of the complaint to show that this particular gasoline service station was held under a title separate from the title to the land upon which it was situated and the court could well assume that the usual course of business had been followed and that the transaction included either a transfer of the real property upon which the station was situated, or a lease upon such real property.

The argument that the complaint is insufficient because it fails to show that in this particular transaction the broker was acting for a compensation is without force because the allegation that the defendant was a licensed real estate broker under the state statute and that while acting as such real estate broker he made the sale and received the purchase price is sufficient to bring him within the terms of the act which itself defines a real estate broker as one who acts for a compensation.

Upon the trial it developed that the plaintiffs owned a gasoline service station, a small chicken ranch, a store and sandwich shop, which they operated upon leased premises, and which they placed in the hands of defendant Mc-Kinney for sale. Acting under this authority McKinney on May 26, 1926, sold the property to Martinez, from whom he collected the purchase price. The property was turned over to the purchasers under escrow instructions through which McKinney was authorized to retain the purchase price in the event of a controversy arising until an adjudication of the controversy by a court. With these escrow instructions McKinney received from the plaintiffs a bill of sale of the personal property and a lease to the real property assigned by them to the purchasers, and these two documents were authorized to be delivered to the purchasers by the escrow-holder upon the expiration of the notice of sale if no

controversy arose. The trial court found that at the time these documents were delivered to McKinney he was acting as a real estate broker for a compensation and commission agreed to be paid to him by the plaintiffs; that he retained possession of the money under the escrow instructions until the controversy which arose over the right of the plaintiffs herein to assign their lease to the property had been determined; that in an action brought for that purpose in the superior court it was judicially determined that these plaintiffs were entitled to assign all their right to the said lease to the purchasers; that they had executed such an assignment and delivered it to McKinney, and that the plaintiffs herein were entitled to receive from McKinney the sum of $1,320, which was the balance left in his hands after deducting his commission and other expenses, and as a part of the same transaction the purchasers were entitled to have delivered to them the bill of sale of the personal property, together with the assigned lease covering the real property.

From the facts in the record and the findings of the trial court it appears that the transaction in dispute consisted of the sale of personal property located upon real estate and of the negotiation for and exchange of the lease of the real property upon which such personalty was located. The transaction, therefore, under the facts and findings, comes directly within the terms of section 2 of the Real Estate Brokers' Act defining a real estate broker as one who "leases or offers to lease, or negotiates the sale, purchase, or *exchange* of leases." The question which is presented on this appeal is whether the sale of personal property, to which the sale or exchange of a lease of the realty upon which the personal property is located is an incident, is to be treated solely as a sale of personal property and not within the Real Estate Brokers' Act. This is the contention of the appellant and in support of the argument he cites *Weingast* v. *Rialto Pastry Shop, Inc.*, 243 N. Y. 113 [152 N. E. 693], and *Salisbury* v. *Alskog*, 144 Wash. 88 [256 Pac. 1030]. The New York statute involved in the Weingast case defines a real estate broker as "Any person who for compensation—buys or rents or offers or attempts to negotiate a sale, exchange, purchase or rental of an estate or interest in real estate." The court held

that this language did not include one who made a specialty of procuring purchasers for restaurants, stores and like going concerns where a lease simply goes with the place as a part of the goodwill. In the Salisbury case the Washington statute defined a real estate broker as one who negotiated for the purchase, sale, exchange, lease, or rental of real estate or an interest therein. The Washingeon court interpreted the statute to apply to a transaction where the broker leased or rented real property and held that it did not apply to one who sold a lease or leasehold interest in real property. The two cases are on a line with *Pike* v. *Psihogios*, 68 Cal. App. 145 [228 Pac. 722], where it was held under the original Real Estate Brokers' Act of 1919 (Stats. 1919, p. 1252) that the definition of a real estate broker in that act did not include one who negotiated the sale of a lease to real property. As a result of the Pike decision the legislature, at its next session, amended this section of the act so as to expressly include within the definition of a real estate broker one who negotiated for or sold or exchanged a lease in real property. The cases cited by appellant are, therefore, not applicable to the California statute as amended. In fact the real argument of appellant is not that our statute does not include such a transaction but that in the case at hand the interest in the lease was merely incidental to the interest in the personalty sold, and that, therefore, that part of the transaction should be disregarded. But it is significant that the interest in the lease was of such importance that the transaction was delayed for more than a year until it could be judicially determined that the respondents were entitled to assign the lease to the purchasers, and that, if this could not be done, the whole sale would have been canceled.

 The point is raised that the transaction upon which the liability is predicated did not come within the term of the bond. The argument is that, because the bond did not become effective until March 14, 1927, it was incumbent upon the respondents to prove that the breach occurred during its term. The trial court found that on March 27, 1927, McKinney misappropriated the money entrusted to him and converted it to his own use. This finding, the appellant states, is not supported by the evidence, but the appellant has taken its appeal under section 953a of the

Code of Civil Procedure, and has failed to print any of the evidence or the findings which it attacks. We must therefore assume, in support of the judgment of the trial court, that its findings were based upon competent evidence and we will not search the typewritten record to discover if error has occurred. (*Estate of Berry*, 195 Cal. 354, 358 [233 Pac. 230].)

The evidence upon which the respondents rely is that the sale was made on May 27, 1926, and the purchase price delivered to McKinney in escrow to be held by him in the event of a controversy "until adjudication by a court of jurisdiction." A controversy actually arose over the right of the respondents to assign to the purchaser the lease covering the premises upon which the service station was located. On June 1, 1926, the purchasers notified McKinney not to turn over the money because of this controversy, and on June 7th of the same year the respondents filed an action in the superior court to have these rights adjudicated. On January 20, 1927, judgment was entered in favor of these respondents in that action decreeing that they had the right to assign the lease involved. After the entry of this judgment a demand was made upon M'cKinney for the balance of the purchase money, but he refused to turn it ·over to them upon advice of counsel that the adjudication referred to in the escrow instructions meant a final judgment and that he should, therefore, hold the money until the expiration of 60 days after the entry of the judgment in the case referred to. When the 60 days had expired the respondents again demanded of McKinney that he turn the money over to them, but he refused, stating at the time that he had used it for other purposes. This demand, it is claimed, was made on March 27 or 29, 1927, within the period covered by the term of appellant's bond.

Finally it is argued that the breach for which recovery was had does not come within the terms of the bond. Section 9a of the Real Estate Brokers' Act, as amended in 1923 (Stats. 1923, p. 93), calls for a bond conditioned for the faithful performance by the broker of any undertaking as a licensed real estate broker under the act. The same section provides that any person injured by the failure of the broker "to perform his duties, *or* comply with the provisions of the act" has a right of action against

the broker and the surety for the recovery of damages sustained by the failure of the broker to perform his duties *or* to comply with the provisions of the act. The bond which was given pursuant to the terms of the act is in the same language. It will be noted that the breach for which recovery may be had may arise either from a failure of the broker to perform his duties as such or from his failure to comply with any of the provisions of the act. In this respect the act differs from the Corporate Securities Act, prior to its amendment in 1925, which required a bond conditioned for the ''compliance with the provisions of law.'' This language was held, in *Blumenthal* v. *Larson*, 79 Cal. App. 726, 730 [248 Pac. 681], to relate to a compliance with the terms of the Corporate Securities Act alone. The same ruling was made in *Mitchell* v. *Smith*, 204 Cal. 197 [267 Pac. 540], where the court commented upon the amendment to the Securities Act in 1925, which extended the liability of the surety under bonds given pursuant to the act. The language of the Real Estate Brokers' Act, like this amendment of 1925, is so much broader than the language of the original Securities Act that the cases cited are not applicable to the case presented here. If the act intended to limit the application of the bond to a failure to perform duties specified in the act itself there would have been no need of adding the alternative—the failure on the part of the broker to perform his duties as a licensed broker. It cannot be doubted that when a licensed broker has obtained the proceeds of a sale of property belonging to his principal and refuses to turn over such proceeds to his principal he has failed to perform the duty incumbent upon him as such broker or agent irrespective of any provision of the act requiring him to do so.

Judgment affirmed.

Sturtevant, J., and Buck, P. J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 21, 1928, and the following opinion then rendered thereon:

THE COURT.—■ In appellant's petition for a rehearing, and in the brief of *amicus curiae* in support thereof,

criticism is made of the opinion heretofore filed herein on the matter of the demurrer to the complaint. It is argued that the complaint was demurrable because it failed to allege that the broker was acting for a compensation or that the money was received as a result of a real estate transaction. We are inclined to the same view and if we had been sitting in the trial court we would probably have sustained the demurrer and required an amendment of the complaint. But when the point is raised on appeal after answer and trial this court is in a different position from what the trial court was in at the time of the ruling on the demurrer. Here it is necessary for the appellant to show that "the error complained of has resulted in a miscarriage of justice." (Sec. 4½, art. VI, Const.) And before we can reverse a case because of such claimed error we must be satisfied that it has resulted in a miscarriage of justice after we have examined the entire cause, including the evidence. When, therefore, the defendant has answered and gone to trial after his demurrer has been overruled and the findings of fact disclose that the alleged infirmities of the complaint have been cured, we may rest our decision on the findings, particularly where, as here, the appellant has failed to show that the evidence was not received without objection.

It is also argued that, in any event, the recovery on the bond should be limited to the amount received for the exchange of the leasehold interest. But the appellant has not shown that the issue was raised in the trial court. It has been raised here for the first time in this petition for a rehearing. The point argued in the briefs was that the value of the leasehold interest was so small that the entire transaction should be deemed to have been a sale of the personalty and not a real estate sale under the act. The respondent testified that he inventoried the personalty at $1,300. The total sale price was $1,700. We took the view, on the point raised, that the value of the lease was substantial and brought the transaction under the act. But there was no evidence on the value of the lease because the matter was not put in issue. We are not required to consider a point raised for the first time in a petition for rehearing.

The petition is denied.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 24, 1928.

All the Justices concurred.