13 N.J. Super. 472 (1951)
80 A.2d 643
PAUL COHEN, PLAINTIFF-RESPONDENT,
v.
UMBERT FRANK SCOLA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 12, 1951.
Decided May 17, 1951.
*473 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Irving Siegler argued the cause for the appellant (Mr. Max Schomer, attorney).
Mr. Leon Sachs argued the cause for the respondent.
The opinion of the court was delivered by JACOBS, S.J.A.D.
The defendant appeals from a judgment for brokerage commission obtained by the plaintiff in the Essex County District Court.
The defendant operates the Park View Restaurant, a luncheonette and restaurant business at 184 Elizabeth Avenue, Newark. His business includes customary stock and good will, fixtures and equipment, and a lease for the restaurant premises. The plaintiff describes himself as a business *474 broker; he is not licensed as a real estate broker under Title 45, Chapter 15 of the Revised Statutes. In January, 1950, the defendant listed his luncheonette and restaurant business with the plaintiff for sale at the price of $6,500, the plaintiff to receive ten percent thereof as his brokerage commission. Thereafter the plaintiff interested Mr. Robert Klein in the purchase of the defendant's business and on March 28, 1950. he brought the prospective buyer and seller together.
The plaintiff testified that during the preliminary discussions on March 28, 1950, the defendant and Klein agreed upon a sale at the price of $6,500 and he reduced his commission to $500. Later that day they went to the office of Klein's attorney who suggested that the contract of sale include a provision as to the gross receipts of the seller's business and a further provision for a lease beyond the term of the lease held by the defendant. These suggestions were agreeable to the defendant and a written contract was prepared and executed. Paragraph 1 provides that the seller agrees to sell and the purchaser agrees to purchase the luncheonette and restaurant business including stock, fixtures, equipment, lease, good will, etc. Paragraph 5 provides that the seller represents his gross weekly receipts to average $525 and guarantees that the gross receipts from March 29, 1950, to April 5, 1950, will aggregate $525; it further provides that this shall be deemed a trial period during which the buyer will have opportunity to keep tally of the gross receipts and in the event they do not aggregate $525 the deposit under the contract will be returned to the buyer. Paragraph 8 provides that the seller agrees to procure and deliver to the purchaser a lease for the premises for an unexpired period not less than three years from April 15, 1950, and in the event of the seller's failure to do so the buyer will be entitled to return of his deposit. Paragraph 10 provides that the parties agree that the plaintiff is the only broker who brought about the sale and is entitled to commission of $500 to be paid by the defendant. The gross receipts did not aggregate $525 during the period from March 29, 1950 to *475 April 5, 1950 and consequently the transaction fell through and the restaurant was not sold. Nevertheless, upon the defendant's refusal to pay the commission claimed by the plaintiff, he instituted his action and obtained the judgment from which the present appeal is taken.
Our courts have held that, in the absence of stipulation to the contrary, a broker earns his commission when he obtains a buyer on the seller's terms "either as originally propounded or as settled by agreement between the seller and buyer." Dickinson v. Walters, 100 N.J.L. 62, 65 (Sup. Ct. 1924); Houston v. Siebert, 129 N.J.L. 468, 472 (E. & A. 1943). And where the agreement to sell is not consummated because of a default by the seller the right to commission is not defeated. See Louis Schlesinger, Inc. v. Burstein Realty Co., 123 N.J.L. 190, 192 (E. & A. 1939). Thus, recovery by the broker was allowed where the seller failed to fulfill his covenant against encroachments (Klipper v. Schlossberg, 96 N.J.L. 397 (Sup. Ct. 1921)), or his undertaking to obtain a mortgage loan for the buyer (Alpern v. Streiff, 5 N.J. Misc. 265 (Sup. Ct. 1927)), or, as here, to meet the stipulated minimum gross receipts during a trial period. Gabriel v. Glickman, 25 N.J. Misc. 120, 123 (Sup. Ct. 1947). See also Stevens v. Oschwald Realty Corp., 10 N.J. Misc. 1140 (Sup. Ct. 1932), affirmed 111 N.J.L. 355 (E. & A. 1933), where a broker was held entitled to recovery from the lessor for renting his property despite the fact that the lease was voided at the lessee's option upon rejection of the lessor's application for a building permit.
We are satisfied that the authorities compel the view that the failure to consummate the sale of the luncheonette and restaurant in the instant matter did not of itself disentitle the plaintiff to his claimed commission. The important question remaining, however, is whether he was barred from recovery because he was not licensed under Title 45, Chapter 15 of the Revised Statutes. That act provides for the licensing of real estate brokers; it defines a real estate broker to include any person, among others, who *476 negotiates a sale "of real estate or an interest therein." In Kenney v. Paterson Milk & Cream Co., 110 N.J.L. 141 (E. & A. 1933), the court held that an unlicensed broker was barred from recovering commission for negotiating the sale, as a going concern, of a business which included amongst its assets land, buildings, equipment and good will. See Solomon v. Goldberg, 11 N.J. Super. 69 (App. Div. 1950). In reaching its conclusion the court recognized fully the conflicting opinions by courts in other jurisdictions on the issue as to whether a licensing requirement for real estate brokers should be construed to be applicable to the sale of a going business which includes real and personal property. Cf. Weingast v. Rialto Pastry Shop, Inc., 243 N.Y. 113, 152 N.E. 693 (1926), with Nittler v. Continental Casualty Co., 94 Cal. App. 498, 271 Pac. 555 (1928), rehearing denied 272 Pac. 309 (Cal. App. 1928). See Buschbaum v. Barron, 1 N.J. Super. 4, 6 (App. Div. 1948). It is conceded that a leasehold is an interest in land within the statute (Kaplan v. Meranus, 136 N.J.L. 425, 426 (Sup. Ct. 1948), affirmed 1 N.J. 219 (1948)), and in Bierman v. Barthelmeus, 24 N.J. Misc. 35, 36 (Dist. Ct. 1946), it was held that the sale of a business including a leasehold comes within the holding in the Kenney case. Although the pertinent statute has been since amended and supplemented in other respects (P.L. 1948, c. 155; P.L. 1949, c. 214), there has been no legislative action towards expressly excluding the sale of a business including land or real estate lease from the orbit of the statute. Indeed, in Corson v. Keane, 4 N.J. 221, 227 (1950), the Supreme Court recently cited both the Kenney and Bierman cases without any suggestion of disapproval. In the light of the foregoing we have reached the conclusion that the statute in its present form is applicable to the negotiation of the sale of a business which includes land or real estate lease and prohibits recovery of commission by an unlicensed broker who negotiates such sale.
Accepting the foregoing construction of the statute, the plaintiff contends nevertheless that he is entitled to recover *477 on the basis of his oral commission agreement with the defendant which the District Court found "had nothing whatever to do with the sale of the leasehold remaining, or with procuring a new lease." Cf. Kaplan v. Meranus, supra. Our independent factual finding is to the contrary. See Rule 1:2-20. Courts have recognized, as counsel conceded at the argument on the appeal, that the ordinary sale of an entire restaurant business to be continued in operation by the purchaser at the same premises contemplates inclusion of its stock, fixtures, tenancy and good will. See Nittler v. Continental Casualty Co., supra; Weingast v. Rialto Pastry Shop, Inc., supra. When the defendant listed his "restaurant" for sale with the plaintiff there was no breakdown of its constituent assets and presumably all were included; we find nothing in the plaintiff's testimony to the contrary. When the ultimate contract was drawn and executed it expressly embodied in paragraph 1 formal language which seems to us to have simply effectuated the original understanding, namely, the sale of the restaurant business "including stock, fixtures, equipment, lease, good will."
Reversed with direction that judgment be entered for the defendant.
BIGELOW, J.A.D. (dissenting).
The majority of the court hold that plaintiff's lack of a real estate broker's license bars recovery of a commission on the sale of defendant's business. The contract of sale covers "stock, fixtures, equipment, lease, good will and all rights under any contract for telephone service." It is the word "lease" that is considered fatal to plaintiff's case. The terms of the lease are not given, but the vendor promises to procure for the purchaser a lease for "not less than three years from April 15, 1950, and at a rental of not more than $100 first year * * * per month." It is a fair inference that the lease included in the sale expired April 15, or only ten days after the day set for transferring title to the purchaser, April 5, 1950. I do not believe the Legislature intended that a business broker must hold a *478 real estate broker's license merely because such a trivial interest in real estate  if it can be so denominated  is included in the transaction. Of course, no commission is sought by plaintiff in connection with the new lease. The trial court found he had nothing whatever to do with procuring it.
The business of real estate broker and that of business broker are clearly distinct. The one deals with land, although the furnishings of a house may be included in the sale; the other relates primarily to chattels and intangibles, although the transfer of a lease is generally part of the deal. The statute, Chapter 15 of Title 45, is plainly concerned with real estate brokers and not business brokers. See especially the qualifications of members of the Real Estate Commission, and the examinations prescribed for applicants for licenses. Note that the statute is penal. R.S. 45:15-23. I suggest a doubt that the statute, if extended to a transaction like the one now before us, could stand as a reasonable regulation of business.
The statute so defines a real estate broker as to include one who negotiates a sale of "real estate or an interest therein." In New York, a statute using substantially the same language, has been held not to require a license of a business broker, although the sale of the business includes the transfer of a lease. Weingast v. Rialto Pastry Shop, Inc., 152 N.E. 693 (N.Y. 1926). The contrary result has been reached in California, but only after the statute was amended so as expressly to include in the definition of real estate broker one who negotiates the sale of a lease. Nittler v. Continental Casualty, 271 Pac. 555 (1928). The transaction involved in Kenney v. Paterson Milk, etc., Co., 110 N.J.L. 141, 164 A. 274, 88 A.L.R. 1416 (E. & A. 1933), embraced the sale of land in fee "perhaps to the value of" $250,000.
I vote to affirm the District Court.