[Civ. No. 20155. Second Dist., Div. Three. Dec. 23, 1954.]

H. L. GARNER et al., Respondents, v. JOHN KNUD-SEN, JR., et al., Appellants.

Lawrence L. Otis, Gilbert E. Harris, James F. Healey, Jr., Harold Arman, Conron, Heard & James and W. E. James for Appellants.

Girard F. Baker and John W. Erpelding for Respondents.

WOOD (Parker), J.—In this action for declaratory relief, judgment was in favor of plaintiffs upon the complaint and cross-complaint. Defendants and cross-complainants appeal from the judgment.

Plaintiffs were lessees under two oil leases. One of the leases, known as the Portals-Grayson lease or the lease south of the tracks (railroad), will be referred to as lease No. 1. The other lease, known as the Portals-Haddad lease or the lease north of the tracks, will be referred to as lease No. 2.

Plaintiffs wanted to obtain an operator to drill oil and gas wells on the property covered by both leases. At the request of plaintiff Mr. Garner, the defendants Knudsen and Sperber made efforts to obtain such an operator. The other defendants Reynolds and D'Evelyn, with the knowledge of Mr. Garner, assisted defendants Knudsen and Sperber.

Through the defendant Knudsen, the plaintiff Mr. Garner was introduced to Tevis F. Morrow as such a prospective operator. On July 13, 1950, after that introduction and after preliminary conferences with Mr. Morrow and some of the defendants, Mr. Garner sent a letter[1] to defendants Knudsen and Sperber which stated the general terms of a proposed assignment to Morrow and stated the amounts of the royalty divisions agreed upon by plaintiffs and by Knudsen, Sperber and their associates.

On July 21, 1950, plaintiffs and Morrow entered into a written agreement which was entitled "Assignment of Oil and Gas Lease."[2]

---

[1]The letter stated, in substance, as follows:

Mr. Morrow agreed to accept assignment of both leases and to commence drilling a well on lease No. 2 before August 15, 1950, and on lease No. 1 before December 10, 1950, or pay rent for ensuing year, or quitclaim same to Mr. Garner; terms of assignment include payment of $6,000 cash, and $4,000 out of 10% of net oil and gas after deducting royalties; royalties amount to 20% on both leases, including landowner's royalty of 14-2/7% on No. 2 and 12-1/2% on No. 1; royalty interest on No. 2 to Knudsen and associate 5/7 of 1%, and royalty interest on No. 2 to Sperber and associate 1%; royalty interest on No. 1 to Knudsen and associate 1%, and royalty interest on No. 1 to Sperber and associate 1.5%; assignments and royalty interests subject to approval of Corporation Commissioner are subject "to the limitations of the leases under which the reservation of same is to be made"; this letter to serve as memorandum until status of assignments has been clarified and production secured justifying the assignments.

[2]"Assignment of Oil and Gas Lease

"This assignment, made . . . this 21st day of July 1950, by and between H. L. Garner and Patience E. Garner, his wife, hereinafter called 'Assignors,' and Tevis F. Morrow, hereinafter called 'Assignee,' Witnesseth:

"For a good and valuable consideration . . . Assignors do hereby sell, assign, transfer, convey, and set over unto Assignee the Oil and Gas Leases [Nos. 1 and 2] . . . together with all of the estate . . . of the Lessees . . . to the real property covered thereby, Reserving, Excepting and Retaining unto Assignors, however, the limited overriding royalty interest hereinafter described in Paragraph 1 and the overriding royalty interest hereinafter described in Paragraph 2.

"1. Assignors reserve . . . unto themselves a limited overriding royalty interest of Ten Per Cent (10%) of the proceeds of sale of 'Production runs,' . . . said limited overriding royalty interest to continue until Assignors shall have received from said Ten Per Cent (10%) . . . the total principal amount of Four Thousand Dollars ($4,000.00). . . .

"2. Assignors reserve, except and retain unto themselves . . . an overriding royalty interest in each of the Oil and Gas Leases [Nos. 1 and 2] . . . equal to the difference between the Lessors' royalty payable under each of the particular Oil and Gas Leases . . . and Twenty Per Cent (20%) of the proceeds of sale of all oil, gas, and other hydrocarbon substances produced, saved, and sold from any of the lands covered by . . . each such particular Oil and Gas Lease. . . .

"3. Assignee shall not by reason of the reservation of said limited overriding and overriding royalty interests be under any obligation to

Thereafter Morrow drilled on lease No. 1 to a depth of approximately 1,720 feet and then abandoned that hole. He drilled a well on lease No. 2 which was placed on production.

On October 19, 1950, after the well on lease No. 2 was placed on production, the Corporation Commissioner issued a permit authorizing plaintiffs to assign to each defendant a specified percentage of the overriding royalty, on lease No. 2, as reserved by plaintiffs under the agreement of July 21, 1950, between plaintiffs and Morrow. On October 30, 1950, pursuant to said permit, plaintiffs issued an assignment of a part of such royalty to defendant Knudsen which provided in part: "Whereas, on July 21, 1950, H. L. Garner and Patience E. Garner, his wife, sold and transferred to Tevis F. Morrow all of their right, title and interest in and to said lease dated May 15, 1950, reserving unto themselves an overriding royalty in and to said lease of 5.714290% . . . Now,

Assignors to preserve the Oil and Gas Leases . . . by operations thereon for the discovery, development, or production of oil, gas, or other hydrocarbon substances, or otherwise.

"4. Assignee may at any time and from time to time surrender or otherwise terminate the Oil and Gas Leases . . . as to the whole or any part of the lands covered thereby and upon such termination shall thereafter be discharged of any further obligations to accrue to Assignors with respect to the lands . . . and Assignors expressly agree that any such surrender or quitclaim shall effect a termination of the interest of Assignors in such Oil and Gas Lease or Leases and the lands embraced thereby . . . without the necessity of obtaining the consent or signature of Assignors to any instrument of surrender or quitclaim . . . provided, however, that if Assignee at any time shall elect to surrender or quitclaim said Oil and Gas Lease or Leases to the Lessor or Lessors thereunder or to surrender or quitclaim as to part of said leased lands, Assignee shall give Assignors written notice of such election specifying in the notice the lands as to which he proposes to make the surrender or quitclaim. . . . If within fifteen (15) days after the giving of such notice Assignor. shall so request in writing, Assignee will execute and deliver to Assignors an appropriate reassignment of said Oil and Gas Lease as to the lands specified in Assignee's said notice. . . .

"5. Subject to the rights, privileges, elections, and immunities of the Lessees under the Oil and Gas Leases . . . and subject to the right of Assignee to quitclaim to Lessors or to reassign to Assignors . . . Assignee agrees to keep and perform all of the terms and conditions of said Oil and Gas Lease(s) to be kept and performed by Lessee. . . . It is understood and agreed, however, that Assignors shall not have . . . under the terms . . . hereof any right to enforce any of the terms or provisions of said Oil and Gas Lease(s) as against Assignee. . . .

"7. In so far as Assignors are concerned, Assignee shall have the right to obtain from the owner . . . of the lands . . . covered by the Oil and Gas Leases . . . such agreements of modification or time extensions . . . as Assignee may elect, provided, however, that no such agreements of modification or time extensions shall reduce the amount of the limited overriding or overriding royalty interests reserved and retained by Assignors hereunder."

therefore, . . . H. L. Garner and Patience E. Garner, his wife, do hereby grant, sell, assign, transfer and convey over unto John Knudsen, Jr., an interest equivalent to 0.357145% of said overriding royalty as reserved under the terms of the assignment of said oil and gas lease dated July 21, 1950, between Assignors and said Tevis F. Morrow.'' The assignments to the other three defendants contained the same words as the assignment to Knudsen, except as to the name of the assignee and the amount of the royalty. Those assignments were recorded on January 30, 1951. As to lease No. 1 (where there was no production), there was no assignment of royalty to any of the defendants. The consideration for the royalty interests, so assigned, was the services of defendants in obtaining Morrow as the operator.

On October 5, 1950, Morrow notified plaintiffs (pursuant to the provision of said agreement between them) that he elected to quitclaim lease No. 1. Within due time thereafter plaintiffs notified Morrow that they wanted lease No. 1 reassigned to them. On October 18, 1950, Morrow executed a document entitled ''Reassignment of Oil and Gas Lease,'' covering lease No. 1, and delivered it to plaintiffs. Thereafter Morrow notified plaintiffs by telephone that he wished to quitclaim lease No. 2 except as to the 10 acres on which he had drilled the producing well. On November 22, 1950, Morrow executed a document entitled ''Partial Reassignment of Oil and Gas Lease,'' covering lease No. 2 except said 10 acres, and delivered it to plaintiffs. The court found that promptly after the reassignments were made plaintiffs notified the defendants that Morrow had abandoned both leases except said 10 acres, and had reassigned the leases (except the 10 acres) to plaintiffs, and that by said abandonment and termination of said sublease by Morrow all right, title and interest of defendants under the assignments to them ceased except as to the 10 acres. The court also found that plaintiffs informed the defendants that there were pressing drilling obligations under the leases which it was necessary for plaintiffs to meet promptly, and it was necessary for plaintiffs to obtain a new sublease with another operator who was qualified to fulfill the drilling obligations under the leases; that plaintiffs asked defendants to assist in finding a new sublessee to save the leases and preserve plaintiffs' rights; that each defendant, except Knudsen, informed plaintiffs that he knew of no one who would be willing to undertake the development of the properties as required under the leases. Plaintiff Mr. Garner

testified that he told defendants Knudsen and Sperber that if they hoped to have any continued interest in any work on the properties they would have to find somebody to take over, that their interest in the overriding royalty had died with the Morrow reassignment.

Plaintiffs, with the assistance of other persons, obtained Mr. Cabeen as new operator for lease No. 2, and they obtained Mr. Meek as new operator for lease No. 1. On January 3, 1951, plaintiffs entered into an agreement with Cabeen, and an agreement with Meek, which agreements were entitled "Assignment of Oil and Gas Lease." Plaintiffs reserved a 5 per cent overriding royalty under the Cabeen agreement and a 5-5/7 per cent overriding royalty under the Meek agreement. About two or three days thereafter, Cabeen and Meek assigned their agreements to Mr. Rheem as the new operator. Rheem drilled several producing wells on both leases. After Rheem succeeded in producing oil on lands covered by the leases, defendants notified him that they claimed overriding royalties under both leases. As a result of such notices, the royalties so claimed by defendants were withheld from the royalties reserved by plaintiffs under the new agreements with Cabeen and Meek (which agreements were assigned to Rheem), and said claimed royalties have been impounded pending the determination of the rights of plaintiffs and defendants.

The overriding royalties from the producing well, drilled by Morrow on the 10 acres reserved by him, have been and are being paid to defendants as provided in their royalty assignments.

The court found as follows: Morrow entered into a sublease, dated July 21, 1950, with plaintiffs which sublease covered leases Nos. 1 and 2, and which sublease was in the form of an assignment of said two leases. The overriding royalty reserved by plaintiffs under said sublease of lease No. 1 was 7.5 per cent, and under the sublease of lease No. 2 was 5.714290 per cent. (Said royalties being in addition to the 10 per cent royalty which was to continue only until $4,000 was paid to plaintiffs.) Morrow commenced the drilling of a well on lease No. 1, and at the instigation and on the advice of defendants Sperber and D'Evelyn he abandoned the well; and thereafter the well was completed and put on production by Rheem under a new sublease. Morrow elected to abandon the sublease (between plaintiffs and Morrow) except the 10 acres surrounding the producing well drilled by Morrow on

lease No. 2. Pursuant to demand by plaintiffs, Morrow executed "to plaintiffs" said "Reassignments" pursuant to provisions of the sublease from plaintiffs to Morrow and pursuant to plaintiffs' right to have said reassignments made to them upon the abandonment of said lease by Morrow. Said reassignments from Morrow to plaintiffs terminated the Morrow sublease (except as to the 10 acres) and all royalties of plaintiffs and defendants thereunder. After said abandonment, plaintiffs again subleased said premises by subleases denominated "Assignments," and Rheem became the sublessee of said premises. Defendants are estopped to claim any right or royalty resulting from the operation of said premises by Rheem under the sublease now held by him or otherwise, except as to the 10 acres reserved by Morrow upon the abandonment of his sublease.

The trial court, in its conclusions of law, stated as follows: The document denominated "Assignment," executed by plaintiffs to Morrow, constituted a sublease in which plaintiffs were sublessors and Morrow was sublessee. The assignments by plaintiffs to defendants of a share of plaintiffs' overriding royalties, reserved by plaintiffs under the Morrow subleases, were not unlimited, but were limited to the duration of the Morrow subleases. Morrow reserved the 10 acres surrounding the well he drilled on lease No. 2, and as to the remainder of the leased lands, the Morrow subleases were terminated by the documents executed by Morrow which were designated "reassignments"; and upon said termination of said subleases said overriding royalties and all interest of defendants therein terminated, except as to said 10 acres so reserved by Morrow. Rheem holds the property, except the 10 acres, as a sublessee by virtue of documents executed by plaintiffs and others subsequent to said termination of the Morrow subleases. Defendants have no right, title or interest in the royalties reserved by plaintiffs from property covered by the Rheem subleases. Defendants are entitled to their respective interests in the royalties from the 10 acres.

The judgment of the trial court, declaring the rights of the parties, was that plaintiffs were at the commencement of the action and now are owners of the following property: Leasehold estate created by leases Nos. 1 and 2; overriding royalties reserved by plaintiffs in the sublease denominated "Assignment of Oil and Gas Lease (with royalty reserved)," executed by plaintiff H. L. Garner and Cabeen; overriding royalties reserved by plaintiffs in sublease denominated "Par-

tial Assignment of Oil and Gas Lease (with royalty reserved)," executed by plaintiffs and Meek; all free of any rights, titles, interests and claims of defendants. The defendants, or any of them, have no right, title, interest or claim in any part of said leaseholds or any part of said overriding royalties. The defendants, and each of them, are enjoined from asserting any right, title or interest in any part of said leaseholds or said overriding royalties.

Appellants (defendants) contend that their royalty interests survived, and were not terminated by, Morrow's reassignments of his leasehold estate to plaintiffs; and therefore they have royalty interests in the Rheem leasehold. They argue that an oil royalty interest is an incorporeal interest in real property, is not a mere personal obligation of the transferrer thereof, but is the transfer of a right to the stated percentage of oil produced from the land during the continuance of the lease upon which it is based, and is binding upon subsequent transferees of the leasehold estate. They say that it thus appears that the question here is whether the document referred to as the Garner-Morrow assignment (agreement between plaintiffs and Morrow) was an assignment or a sublease. They say further that if it (agreement between plaintiffs and Morrow) was an assignment then the reassignments by Morrow to plaintiffs, after the abandonment by Morrow, were subject to the outstanding overriding royalty interests conveyed by plaintiffs to defendants, and those royalty interests continued in force and effect under subsequent transfers of the leasehold estates (that is under the new transfers by plaintiffs to Cabeen, Meek, and Rheem). They say further that, on the other hand, if the Garner-Morrow assignment is a sublease, then the reassignments by Morrow to plaintiffs would operate as a surrender of the subleasehold estate and that the overriding royalties reserved thereunder would terminate. In other words (as stated at another place in their brief), appellants state that their contention is that the question is whether the Garner-Morrow assignment is an assignment or a sublease, for if such instrument is a sublease then the subleasehold estate was extinguished by the reassignments to Morrow to plaintiffs, and then of course appellants' interests would terminate with the extinguishment of the leasehold estate upon which their interests were based; but, on the other hand, if such instrument is an assignment then no new estate would be created by the transfer, and of course the reassignments by Morrow to plaintiffs would merely

be a further transfer of the estates created by the original leases Nos. 1 and 2, and the royalty interests of appellants, being based not on a subleasehold but on the original leasehold, would continue in force and effect.

Respondents (plaintiffs) contend that the Garner-Morrow agreement was a sublease. They argue that the entire estate of plaintiffs as lessees was not transferred to Morrow but that they reserved a limited overriding royalty (the 10 per cent until $4,000 was paid) and a further overriding royalty (the difference between 20 per cent and the landowner's royalty of 12½ per cent or 14 2/7 per cent). They argue further that Morrow's right to surrender or terminate the master leases in whole or in part was conditioned upon his notifying plaintiffs of his election to terminate, and conditioned further that upon the request of plaintiffs within 15 days after such notice Morrow was required to reassign to plaintiffs.

In Glassmire, Oil and Gas Leases and Royalties, second edition (1938) it was said at page 319: ''There is a clear distinction between an assignment of an oil lease and a 'sublease.' An assignment signifies parting with the whole unexpired term and all interest therein; anything short of this, or for a part of it only, or where the lessee conveys or assigns anything less than all of his rights, creates a sub-lease. . . . *Where the assignor assigned the whole lease and reserved an over-riding royalty, the transfer amounts to a sub-lease and not an assignment proper.*'' (Italics added.)

In *Hartman Ranch Co.* v. *Associated Oil Co.*, 10 Cal.2d 232 [73 P.2d 1163, 1168], it was said at page 242: ''The generally stated distinction between an assignment and a sublease is that an assignment transfers the entire unexpired term.''

In *La Laguna Ranch Co.* v. *Dodge*, 18 Cal.2d 132 [114 P.2d 351, 135 A.L.R. 546], the plaintiff entered into an oil lease with Boatright and Meacham, as lessees. The lessees assigned overriding royalties in the oil to defendants therein. After the plaintiff had indicated to the lessees that it was about to declare a forfeiture for failure of lessees to drill within the required time, the lessees quitclaimed their rights under the lease to the plaintiff, the lessor. The action was by the owner of the land (lessor) to quiet title. The defendants claimed interests in the land by reason of the royalty interests which the lessee had assigned to them. The question was whether the royalty interests survived after the lessee had surrendered the leasehold by quitclaim deeds. The court therein said at page 140: ''Defendants' overriding royalties were, therefore,

interests in real property. [Citation.] The interests thus created were not unlimited but were determinable interests limited to the duration of the existing lease. Termination of the oil and gas lease would result in the termination of the interests created under it." It was held therein that the royalty interests did not survive the surrender, and that the quitclaim deeds terminated the interests of defendants.

In 24 American Jurisprudence, page 591, section 84 (Gas and Oil), it was said: "[T]here is a marked distinction between an assignment and a sublease. An assignment merely transfers an existing estate into new hands, but a sublease creates a new estate. . . . Thus, a transfer of the leasehold or of a specific portion thereof is to be regarded as an assignment if the transferrer retains no right of any kind therein, but will be deemed a sublease if he reserves a rental or an overriding royalty."

In *Halbert* v. *Hendrix* (1951), 121 Ind.App. 43, 48 [95 N.E.2d 221, 223], a statement was made which was similar to the above quoted statement from American Jurisprudence.

In *Roberson* v. *Pioneer Gas Co.* (1931), 173 La. 314 [137 So. 46, 48], it was said at pages 318 and 319: "The reason for that is that the defendant thereby disposed absolutely of its interests in the lease on the 40 acres of land, *and left no contractual relation whatever between the parties, or obligation on the part of the assignee in favor of the assignor. If the Pioneer Gas Company had retained an overriding royalty,* or excess royalty, to be paid by Pipes & Mack to the Pioneer Gas Company, in addition to the one-eighth royalty to be paid by Pipes & Mack to the original lessors, *the contract between the Pioneer Gas Company and Pipes & Mack would have been a sublease, and not merely an assignment* of the lease on the 40 acres of land." (Italics added.)

It therefore appears that there are cases and other authorities to the effect that if an overriding royalty is reserved by a lessee, who transfers his lease (except for such reservation), the transfer is a sublease. In the present case, however, in view of a provision in the Garner-Morrow agreement regarding the condition under which Morrow might terminate his lease, it is not necessary to decide whether reserving an overriding royalty by plaintiffs was such a reservation that the agreement with Morrow was a sublease. The provision in the Garner-Morrow agreement, regarding termination of the lease by Morrow, was as follows: ". . . provided, however,

that if Assignee at any time shall elect to surrender or quitclaim said Oil and Gas Lease or Leases to the Lessor or Lessors thereunder or to surrender or quitclaim as to part of said leased lands, Assignee shall give Assignors written notice of such election specifying in the notice the lands as to which he proposes to make the surrender or quitclaim. . . . If within fifteen (15) days after the giving of such notice Assignors shall so request in writing, Assignee will execute and deliver to Assignors an appropriate reassignment of said Oil and Gas Lease as to the lands specified in Assignee's said notice. . . .''

In *Hartman Ranch Co.* v. *Associated Oil Co., supra,* 10 Cal. 2d 232 [73 P.2d 1163, 1168], it was said at page 243: ''[W]e are committed to the so-called Massachusetts rule that where the transferor reserves the right of reentry for breach of conditions he has a 'contingent reversionary interest' which prevents his transfer from operating as an assignment of the whole of the unexpired term. Instead, a sublease arises.'' The said provision in the Garner-Morrow agreement whereby plaintiffs were entitled to have the leases retransferred to them was in effect a reservation of a right of re-entry upon the failure of Morrow to comply with the leases. Plaintiffs reserved the right to regain possession of the premises by reassignment from Morrow, and to hold possession of the premises under the original leases, in the event Morrow elected not to fulfill the requirements of the leases. Plaintiffs had a contingent reversionary interest in the leases. The agreement between plaintiffs and Morrow was a sublease.

At the oral argument herein appellants presented a further contention which had not been presented in their briefs. They argued that the assignment of royalty interests to appellants did not involve royalty interests which were created by the Garner-Morrow agreement but did involve royalty interests which were portions of the two leasehold estates (main leases Nos. 1 and 2), which portions or interests were excepted and held out from the operation of the Garner-Morrow agreement, and therefore such royalty interests of appellants continue in duration for the terms of the main leases (between the landowners and the Garners), irrespective of the termination of the Garner-Morrow agreement. Under the main leases, the Garners, as lessees, were entitled to the oil and gas produced under both leases except as to the amount for landowners' royalty. The assignment of royalty interests by the Garners to appellants recited that

the Garners assigned to each appellant a certain percentage of the overriding royalty as reserved (by the Garners) under the assignment (sublease) between the Garners and Morrow. In the Garner-Morrow assignment (sublease) it was provided in substance that the Garners "reserve, except and retain unto themselves" certain percentages of the oil and gas produced from the lands covered by the leases; and that the said percentages should be paid by Morrow to the Garners from the production of oil and gas, in the same manner as is provided in the main lease for payment of royalties to the landowners. Upon the termination of the Garner-Morrow agreement by Morrow, there was no production under that agreement (except from said 10 acres) from which said percentages could be paid. Appellants' interests were interests in production under the sublease and were not interests under the main leases, and their interests did not continue for the duration of the main lease. The said further contention presented at the oral argument is not sustainable.

By reason of the above conclusion, it is not necessary to discuss the finding (and the contention of plaintiffs) that defendants are estopped to claim any royalty from the operation by Rheem.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied January 20, 1955, and appellants' petition for a hearing by the Supreme Court was denied February 16, 1955.