[Civ. No. 10760. Third Dist. Sept. 15, 1964.]

ELBERT C. REED et al., Plaintiffs and Respondents, v. SOUTH SHORE FOODS, INC., Defendant and Appellant.

Cameron & Dopkins, Keslar & Fredericks, William E. Dopkins and H. Burdette Fredericks for Defendant and Appellant.

Jones, Lamb, Jarboe & Boli, Jolin & Salle, Herman I. Jolin, Kenneth Eymann and Keith W. Lamb for Plaintiffs and Respondents.

PIERCE, P. J.—In this unlawful detainer action plaintiffs prevailed and defendant South Shore Foods, Inc., a corporation, appeals.

On April 1, 1958, J. W. Heaton and John H. Lowe, owners of restaurant premises at Stateline (in El Dorado County) at Lake Tahoe leased them to plaintiffs, Elbert C. and Muriel S. Reed. The restaurant was first operated by the Reeds as individuals, then as copartners with Joseph and Helen Lisovic. On January 2, 1959, the business was incorporated as South Shore Foods, Inc., the appealing defendant herein. The shareholders and their respective shares were: the Lisovics 51 per cent, the Reeds 25 per cent, W. H. Weldgen 24 per cent. The Reeds transferred their lease to the corporation. The corporation, managed by the Lisovics, operated the restaurant for a year and five months. The Reeds moved to Alaska and thereafter had only a limited connection with the business although Mr. Reed was a director. Monthly rentals of $1,000 were paid by the corporation directly to the owners. In the winter of 1959-1960 the corporation was in financial difficulties. Rentals for March, April and May were in default. Notice dated May 19, 1960, was served by the owners upon the Reeds in Alaska. It notified them that said rentals were unpaid; also taxes and insurance premiums. Demand was made for payment of these delinquencies within 30 days. The Reeds returned from Alaska. On June 3, 1960, they served a three-day notice upon the corporation, as required by Code of Civil Procedure, section 1161, subdivision 2, demanding payment of rent, the curing of the other delinquencies and stating an intention to declare a forfeiture in the absence thereof. Payment not having been made within the three-day limit, this action was commenced on June 8, 1960. Plaintiffs filed a $5,000 undertaking, obtained an order for a writ of possession and were put into possession thereunder on June 9th. They

and their transferees have been in possession since that date. Evidence relating to an unaccepted offer by defendant to cure its defaults, made on June 7, 1960, will be discussed below.

Although actions in unlawful detainer are summary in nature and have precedence (see Code Civ. Proc., § 1179a), for an unexplained reason this action was not pretried until March 23, 1961, and not brought to trial until June 11, 1962. It was tried to the court, written briefs were submitted and a memorandum of decision was rendered October 2, 1962. Findings were not signed and judgment entered until February 20, 1963. The memorandum of the trial judge observed: ". . . [T]he unusual facts of this case reveal a situation of extreme hardship to the defendant, which should be permitted to seek the relief provided by section 1179 of the Code of Civil Procedure."[1]

The record does not disclose that defendant ever sought to avail itself of this privilege.

The principal contentions on this appeal are: (1) That the transfer by the Reeds to the corporation of the leasehold interest was an assignment and not a sublease and therefore plaintiffs, as assignors, have no standing to maintain this unlawful detainer action; (2) that, even assuming it to be a sublease, the action was prematurely commenced because plaintiffs did not observe a 30-day grace period included in the master lease. Other incidental contentions are made which will be noted in the discussion to follow. We find against defendant on all contentions and affirm the judgment.

The written instrument (Plaintiffs' Ex. 1), which is the instrument of reference regarding appellant's first contention, after formally transferring the master lease to defendant corporation, "subject to all the conditions, stipulations and agreements contained therein" sets forth: "This assignment is conditioned upon the agreement of the assignee that in the event that the assignee should, for any reason whatever, during the term of said lease, decide to surrender the lease to the Lessor, the assignee will advise the assignors of such determination prior to such surrender, in order that they may, if they so desire, take over the lease on the building for the remainder of the term thereof."

---

[1]Code of Civil Procedure, section 1179 provides that in cases of hardship the court may upon the tenant's application relieve him against forfeiture of the lease and restore him to his former estate provided that "full payment of rent due, or full performance of conditions or covenants stipulated, so far as the same is practicable, be made."

Plaintiffs' answer to appellant's contention that this language assigns the lease is that the quoted provision constitutes the reservation of a reversionary interest by the transferor to the end that the instrument, although entitled an "assignment," is effectually a sublease.

 The transfer of the whole of a lessee's interest in a lease is an assignment; transfer of a portion of the lessee's interest is a sublease. (1 American Law of Property, § 3.57 (Lesar), at p. 297.) Proper categorization is important (as this case illustrates) because different legal consequences attach. [5] If the transfer is an assignment, the transferee comes into privity of estate with the head lessor and the transferor is not the landlord of his transferee. When the transfer is a sublease, the transferor becomes the landlord, the transferee the subtenant, and the latter is not in privity with the head lessor. (*Op. cit.,* § 3.57, at p. 297.)

 By *Barkhaus* v. *Producers Fruit Co.*, 192 Cal. 200 [219 P. 435], California became committed (see *Hartman Ranch Co.* v. *Associated Oil Co.*, 10 Cal.2d 232, 243 [73 P.2d 1163]) to the so-called "Massachusetts rule" determining when an instrument is to be classified as an assignment, when a sublease. In that case it was held that a transfer to operate as an assignment must not only transfer the leasehold interest for the full term but that *all* of the transferor's interest in the lease must be transferred. The opinion states (on page 206): ". . . If by the terms of the conveyance, be it in the form of a lease or an assignment, new conditions with a right of entry, or new causes of forfeiture are created, then the tenant holds by different tenure, and a new leasehold interest arises, which cannot be treated as an assignment or a continuation to him of the original terms."

In the *Hartman* case, *supra,* 10 Cal.2d 232, the "Massachusetts rule" was stated as follows (on p. 243): ". . . [W]here the transferor reserves a right of reentry for breach of conditions he has a 'contingent reversionary interest' which prevents his transfer from operating as an assignment of the whole of the unexpired term. Instead, a sublease arises."

In *Garner* v. *Knudsen,* 129 Cal.App.2d 747 [277 P.2d 890] (hearing by Supreme Court denied), decision turned upon the court's construction of a transfer by a lessee of an oil and gas lease. The transfer there involved, held to be a sublease and not an assignment, is quoted in full in the report of the case (129 Cal.App.2d at p. 748, fn. 2). There are many points of similarity between the instrument there in-

volved and that in the case at bench. It was entitled an "assignment." It transferred the lease for the full term. It was subject to the terms and conditions of the master lease (which the assignee *there* expressly agreed to perform). The transferee was given the right of surrender, i.e., reversion did not rest upon his default under the lease; and upon a contemplated voluntary surrender of the master lease by the transferee he was required to notify the transferor and there, as here, the latter had the option of taking a "reassignment" of the lease.

There was, in *Garner*, an additional factor: the transferor by the transfer had also reserved an overriding rent or royalty and the court cites authority (24 Am.Jur. 592, § 84, and *Halbert* v. *Hendrix*, 121 Ind.App. 43 [95 N.E.2d 221, 223]) that where such a right is reserved the instrument would be deemed a sublease and not an assignment. But the court also cites *Hartman Ranch Co.* v. *Associated Oil Co., supra,* 10 Cal. 2d 232, 243, and quotes (on p. 756) the portion of the opinion we have quoted above followed by this statement:

". . . The said provision in the Garner-Morrow agreement whereby plaintiffs were entitled to have the leases retransferred to them was in effect a reservation of a right of reentry upon the failure of Morrow [transferee] to comply with the leases. Plaintiffs reserved the right to regain possession of the premises by reassignment from Morrow, and to hold possession of the premises under the original leases, in the event Morrow elected not to fulfill the requirements of the leases. Plaintiffs had a contingent reversionary interest in the leases. The agreement between plaintiffs and Morrow was a sublease."

If *Garner* is not the spotted-calf case, we nevertheless find its points of similarity overwhelmingly persuasive.

The fact that a subtenant makes rental payments directly to the owner does not affect the status of the transfer, even though such payment is by agreement. (1 Tiffany, Real Property (3d ed.) § 124, at p. 202.)

We hold that the instrument of transfer here was not an assignment and that the relationship between plaintiffs and defendant was that of sublessor and sublessee.

The summary processes of unlawful detainer are available to a sublessor. By the express provisions of Code of Civil Procedure section 1161, subdivision 3 (last paragraph): "A tenant may take proceedings, similar to those prescribed in this chapter, to obtain possession of the premises let to a sub-

tenant . . . in case of his unlawful detention of the premises underlet to him or held by him.'' The provision under which plaintiffs here acted was section 1161, subdivision 2.

 The next contention is that even conceding a sublease to be involved the right to a grace period of 30 days and notice of default for nonpayment of rent and nonperformance of other obligations, being a part of the master lease,[2] was carried over and became an implied part of the agreement between plaintiff and defendant.

Appellant's brief states this right necessarily follows from the provision of the agreement between plaintiffs and defendant transferring the lease which states that transfer is made ''subject to all the conditions, stipulations and agreements contained [in the master lease].''

 But it was held by this court in *Johnson* v. *Couch,* 189 Cal.App.2d 687, at pages 691, 692 [11 Cal.Rptr. 645], that such ''subject to'' clauses are merely a statement of a rule of law binding upon the sublessee without necessity of express provision in the sublease, and they do not create any privity either of contract or estate between the sublessee and head lessor. Therefore, the ''subject to'' clause cannot be construed as incorporating the provisions of the master lease into the sublease. (See also *Pedro* v. *Potter,* 197 Cal. 751 [242 P. 926, 42 A.L.R. 1165].)

 *Pedro* v. *Potter, supra,* further holds (on pp. 758, 759) that provisions of the master lease for the *benefit* of the original tenant (which provisions in that case were for apportionment of rentals in the event the owner exercised a right of accelerated termination destroying the leasehold interest of the sublessor) do not become an implied part of the sublease.

The reason for the rule lies in the fact that the master lease and the sublease vest different estates and rest upon different agreements. Benefits conferred and considerations given for such benefits may be entirely different. This is illustrated by the facts of this case. The owner granting the original tenant a 30-day grace period for rental payment and performance of other obligations does so without materially jeopardizing his own interests. But to ascribe such an agreement by implication as a part of the sublease for the benefit of the sublessee would have quite different and serious consequences. It would leave the sublessor, exposed to the danger of divestiture and having to make a substantial cash outlay

---

[2]The provision included in paragraph 18 of the master lease is: ''Lessees shall have 30 days grace to correct any breach of contract.''

because of his sublessee's defaults, without any effective immediate remedy against said sublessee to insure reimbursement.

Reason as well as rule therefore requires our second holding, in affirmance of the trial court's judgment, that the grace period of the master lease was not incorporated into the sublease and that plaintiffs were not obligated to serve upon defendant a 30-day notice demanding cure of its defaults. The three-day notice was sufficient and the commencement of the action was not premature.

The next contention of defendant is that a "tender" was made of the sums due, thus curing the default. On June 7, 1960 (after the three-day notice given June 3, 1960, had expired), Lisovic had gone to the office of Paul Gervais, an attorney at Lake Tahoe, with one Andrew Knaflitch. The latter gave the attorney a check for $5,000 and the attorney phoned to Sacramento to plaintiffs' attorney, stating he had the money to cure the defaults. The attorney told him the offer was too late. The check was then returned to Knaflitch who substituted a check in the sum of $3,500 for Gervais to hold, stating that he and Lisovic would take the balance of the money to the owners. The $3,500 check was endorsed by Gervais to be held in his trustee account. Payment on it was stopped. (Lisovic testified that he had arranged to borrow from Mr. Knaflitch—who appears to have been a potential purchaser of the restaurant—to meet the defaults, that on June 7th he had seen John Lowe, one of the owners who had told him he could not take the money.)

The trial court found that the defendant's tender was late and ineffective. The ruling was correct. In fact, counsel for appellant does not directly contend otherwise, assuming the three-day notice to have been sufficient.

Nevertheless, the contention is one which would have a strong appeal to the conscience of the court were it not for one puzzling circumstance—why did not defendant cure its defaults through statutory means afforded? The law abhors forfeitures. This maxim is reflected in provisions of the chapter in the California Code of Civil Procedure on unlawful detainer. By section 1174, in rent default cases where the lease has not expired and the notice has not declared a forfeiture, the court may, and if the lease contains no forfeiture clause must, vacate judgment upon cure of default within five days. By section 1179 (see footnote 1, *supra*) relief from forfeiture in any "case of hardship" may be

allowed by the court where application accompanied by full payment of rent due "or full performance of conditions or covenants stipulated, so far as the same is practicable, be made." The complaint here was filed on June 8, 1960. By Code of Civil Procedure section 1179a unlawful detainer actions are given precedence in the matter of setting for hearing or trial. Had defendant back in 1960 joined issues promptly, requested a speedy trial under section 1179a and evidenced an ability to cure the defaults, the whole matter could have been disposed of summarily and there is no doubt whatever that the court would have found a case of hardship under section 1179 (as indeed it did when the case was tried). Instead, defendant allowed the action to sit for two years which suggests strongly that actually defendant at no time had ability to bring its obligations current. (Lisovic had testified that the corporation was "flat broke," that patronage at the restaurant had been so slight that it was keeping open sometimes only five days a week. There was also evidence that it had not paid its 4th quarter 1959 and 1st quarter 1960 federal withholding taxes. The court found that defendant was insolvent. It is not contended that evidence does not support that finding.)

A contention is made that the three-day notice was insufficient because it demanded taxes and insurance premiums not in fact due. But defendant's answer admits the nonpayment of taxes; and as regards nonpayment of insurance premiums, the tenant's obligation to pay as set forth in the master lease is clear; also clear is the fact that the owners had taken out the policy, had paid the premium, and had demanded reimbursement which plaintiffs had been required to make. The amount was not in dispute—Lisovic's only contention is that he too had taken out a fire insurance policy, but there was no evidence whether this policy fully covered the owners' loss, or whether it was taken out by agreement with the owners or whether defendant had even notified the owners of the coverage—if indeed there were double coverage. The contention is without substance.

Contention is also made that because plaintiffs were shareholders and Mr. Reed a director in defendant corporation this prevented them from occupying another status— that of the corporation's sublessor. It did not. Directors may deal with the corporation and where no fraud or unfairness appears the contract is neither void nor voidable. (Corp. Code, § 820; 1 Ballantine & Sterling, Cal. Corporation Laws, § 78, p. 143 et seq.; 3 Witkin, Summary Cal.

Law, 2336 and cases cited.) ▮▮▮ Defendant's apparent hypothesis is that because plaintiffs occupied the relationship of a fiduciary towards the corporation they could not, in their status as sublessors, exercise the rights granted by the unlawful detainer sections of the California Code of Civil Procedure and the attempt to do so constituted, ipso facto, a taking of undue advantage. On the contrary, as we see it, plaintiffs, required under the master lease to pay the rentals due, to the end that their own leasehold interest would be preserved, were under no obligation to advance rentals, i.e., lend their credit, to attempt to save the sinking corporate ship. As to what plaintiffs' obligations to defendant would have been to reinstate the sublease even after the expiration of the three-day notice, had the defendant demonstrated a clear ability to cure its defaults, we need not express an opinion. Defendant's testimony did not establish such an ability.

▮▮▮ Other contentions advanced for the first time on appeal, and which are insubstantial, do not require discussion. (*Richard* v. *Richard,* 123 Cal.App.2d 900 [267 P.2d 867]; *Wilson* v. *Board of Retirement,* 156 Cal.App.2d 195, 207 [319 P.2d 426].)

The judgment is affirmed.

Friedman, J., concurred.

A petition for a rehearing was denied October 14, 1964, and appellant's petition for a hearing by the Supreme Court was denied November 10, 1964.