[L. A. No. 8002. In Bank.—January 6, 1926.]

NICK PEDRO, Respondent, v. D. A. POTTER et al., Appellants.

F. A. WILFERT, Respondent, v. D. A. POTTER et al., Appellants.

[1] LEASES — SUBLEASES — INCORPORATION OF CONDITIONS BY REFERENCE—TERMINATION—APPORTIONMENT OF RENT.—The insertion in a sublease of a clause that it "is made subject to the conditions of the lease" of the property from the owner to the sublessor does *not give rise to an inference that it is intended thereby to incor-*porate and make all the stipulations and agreements of the original lease a part of the sublease; and, notwithstanding the original lease contains a provision that the owner of the demised premises may terminate the lease by giving sixty days' written notice and "by paying to the lessees all loss and damage occasioned thereby," a clause in the sublease that it "is made subject to the conditions" of such original lease cannot be construed as requiring the sublessors to apportion rent under the sublease upon a termination of the original lease.

[2] ID.—CONDITION—DEFINITION OF TERM.—The term "condition" in a conveyance or agreement is a qualification, restriction, or limitation whereby it is provided that in case a particular event does or does not happen, or in case either of the parties do or omit to do a particular act, an estate shall commence, be enlarged, or be defeated.

[3] ID.—TERMS OF LEASE—DUTY OF SUBLESSEE TO ASCERTAIN—EXPRESS REFERENCE—KNOWLEDGE.—It is the duty of a person contracting for a sublease to ascertain the provisions of the original lease, and a subtenant is charged with notice *of the existence of the original* lease, and is bound by its terms and conditions; but even if this were not so, a clause in a sublease that it is made subject to the conditions of the lease from the owner to the sublessor is notice to the sublessee of the existence of such original lease, and knowing of its existence he is charged with knowledge of its covenants, conditions, and limitations which, by reference, are made a material part of the terms and conditions of the sublease.

[4] ID.—TERMINATION BY OVERLORD—RECOVERY OF ADVANCE RENTAL.—Where a sublessee takes with full knowledge that the tenancy of the sublessor is dependent upon the will of the overlord, said

2. See 9 Cal. Jur. 334.

3. Subletting of leased premises, notes, 117 Am. St. Rep. 91; Ann. Cas. 1916E, 822. See, also, 15 Cal. Jur. 767; 16 R. C. L. 876,

sublessee takes subject to the will of the overlord; and where said sublessee expressly agrees to a termination of his sublease in the event of a sale of the premises by the overlord and, while providing for recoupment of moneys paid out for certain improvements made, does not provide in the sublease for the recovery of rent paid in advance in case·his estate is terminated before the full term, upon the happening of such event said sublessee cannot recover back from the sublessor rent paid in advance pursuant to the terms of his sublease.

[5] ID.—LOSS OF ENJOYMENT OF PREMISES—APPORTIONMENT OF RENT. As a general rule, in this state, as at common law, a tenant who, after the beginning of the term, is deprived of the beneficial enjoyment of the leased premises by inevitable casualty, happening without the fault of either the landlord or tenant, is not entitled to an apportionment of rent in the absence of any covenant in the lease so providing.

[6] ID.—DISTURBANCE OF POSSESSION—DAMAGES RECOVERABLE—ACTION UPON EXPRESS COVENANT.—Where a sublease makes provision for the disturbance of the sublessee's possession and, following such disturbance, the sublessee sues the sublessor to recover rent paid in advance upon the theory that such rent is recoverable under an express covenant in the sublease against loss occasioned by the exercise of the owner's option to terminate the tenancy, no question of damages for the breach of an implied covenant of quiet enjoyment and possession of the demised premises arises, or could arise, by force of section 1927 of the Civil Code.

[7] ID. — DAMAGE TO CROP — EXPENDITURES IN PREPARING LANDS FOR CROPS — LIABILITY OF SUBLESSOR — INTENT. — Where a sublease makes provision for the termination of the sublessee's right of possession at the will of the overlord and provides that, in the happening of such event, the sublessee shall be allowed "all damage to crops," the sublessee's right of recovery is not limited to · crops actually in a state of maturity and practically ready to be harvested, but he may recover damages in the way of expenditures made in preparing the lands for the planting and cultivating of crops, where such was the understanding of the parties at the time the sublease was made.

[8] APPEAL—STIPULATION—CORRECTION OF ERRORS—JUDGMENT.—Where such a case is before the appellate court on an agreed statement of the case, and the stipulation of the parties is that the appellate court may construe the sublease and place such construction upon it as in law it should receive, allowing or disallowing such items

5.  Apportionment of rent, notes, 31 Am. Dec. 317; 37 Am. Rep. 283; Ann. Cas. 1912B, 117; 33 L. R. A. (N. S.) 540. See, also, 15 Cal. Jur. 717, 721; 16 R. C. L. 956.

8.  See 2 Cal. Jur. 984; 2 R. C. L. 277.

of damages as may appear to be within the intent of the parties thereto, the appellate court, upon determining that the trial court committed error as to certain items, may modify the judgment so as to correct such error, without requiring a retrial or making any new or different findings.

(1) 35 C. J., p. 1002, n. 73.    (2) 3 C. J., p. 695, n. 54; 12 C. J., p. 400, n. 12, 14.    (3) 35 C. J., p. 1002, n. 72, 73.    (4) 36 C. J., p. 384, n. 38 New.    (5) 36 C. J., p. 384, n. 38 New.    (6) 36 C. J., p. 84, n. 94 New.    (7) 35 C. J., p. 1002, n. 74 New.    (8) 4 C. J., p. 1123, n. 45.

APPEAL from a judgment of the Superior Court of Los Angeles County.  Ruben S. Schmidt, Judge *pro tem.*  Modified and affirmed.

The facts are stated in the opinion of the court.

Gibson Dunn & Crutcher, H. F. Prince and Homer D. Crotty for Appellant.

Newby & Palmer and Hugh A. McNary for Respondents.

SEAWELL, J.—On August 25, 1921, D. A. Potter and W. L. Owen, the defendants and appellants herein, leased from the Bradbury estate a portion of the Rancho Laguna, consisting of approximately sixty-five acres, situate in the county of Los Angeles, for the term of five years, beginning September 1, 1921, and ending August 31, 1926.  The lands were leased for farming purposes and at an annual rental of $2,890, payable semi-annually in advance on the first day of September and March of each year during the term.  Said lessees covenanted to pay said rent throughout said term and agreed not to assign or hypothecate said lease without the written consent of the lessors.  It was provided in said lease, however, that said lessees might sublet said lands or any portion thereof for like farming purposes, subject to all the terms and conditions provided in the original lease, "the subtenants to pay the rent and to be answerable to said lessees under the term of any sublease not in conflict with the terms of this (said original) lease."  Said lessees covenanted and agreed for themselves, successors, and subtenants not to commit or suffer to be committed any strip or waste

197 Cal.—48

on said property and not to pollute or suffer to be polluted or filled in any of the flowing wells upon said property, and upon the termination of the lease to leave all casing which was then in or might thereafter be placed in any wells by said lessees. Said lessees were given the right at the termination of the lease to remove all pumps, pipe-lines, machinery, and improvements placed on said property by them, excepting the casing placed in said wells. The lessors reserved the right to terminate the lease at any time by giving sixty days' written notice and paying to the lessees "all loss and damage occasioned thereby." Said lessors were given the option of purchasing all of the improvements placed upon the premises by the lessees except the casing in the wells, which was to be left upon said premises, within sixty days after the expiration of or upon the sooner termination of said lease, by giving written notice of such intention to purchase. Covenants to protect the property against liens, etc., suffered by the fault of the lessees or their subtenants, and agreements to submit to arbitration the question of the amount of damages suffered in the event that their tenancy should be terminated before the expiration of their full term; values of improvements, and the adjustment of other matters likely to result in disputes or disagreements, were specifically provided for by the lease, as well as the usual covenants and agreements to be kept by a lessee, but as these are not matters in anywise involved in the action, further notice of them is unnecessary.

On August 15, 1921, appellants executed two separate subleases upon the portion of the rancho above referred to, one to respondent Nick Pedro and the other to respondent F. A. Wilfert. The subleases are very similar in all material respects, and counsel, having agreed that the questions of law applicable to one case are also applicable to the other, stipulated that the two appeals might be consolidated, and they are so presented upon an agreed statement of facts in lieu of a bill of exceptions. By said subleases respondent Wilfert became the tenant of 45 acres of said rancho, at an annual rental of $2,025, and respondent Pedro became the tenant of the remaining 20 acres at an annual rental of $900. In each case the term is for five years from August 15, 1921, rent payable six months in advance in equal installments. The main question raised by the appeals involves the con-

struction of the two subleases with reference to the original
overlease, and is based upon the following language which
is contained in each of the subleases, to wit: ''This lease is
made subject to the conditions of the lease of this property
from the Bradbury Estate to parties of the first part.''  As
the right to recover damages and the amount thereof rests
upon language peculiar to each lease, it is necessary to make
a brief *résumé* of each.  By the lease made between appel-
lants, the sublessors, and Wilfert, the latter agreed to equip
the water well on said property and put it in condition to
pump and to pay one-half of the expenses of equipping the
same and thereafter to pay his own operating expenses dur-
ing the life of the lease.  In case of sale of the property
appellants agreed to take over the pumping plant at its ap-
praised value and also to compensate Wilfert for all ''dam-
age to crops from sale.''  It was further agreed that the
appellants, sublessors, were to retain a one-fourth interest
in a well described in the lease and were to have the use of
said well and water on land they might lease and they were
to pay their part of the cost of operating expense thereof.
It was also agreed that Pedro should have a one-fourth in-
terest in said well and to pay his part of the operating ex-
penses.  The sublease made between appellants and Pedro
of even date with the Wilfert sublease contained the agree-
ment whereby Pedro was to share in the cost of equipping
a well on said property and putting it in a condition to
pump to the extent of one-fourth of the total cost.  He was
also to pay his part of the operating expenses of said well.
Like the Wilfert lease it contained the clause that in case of
sale of the property the appellants were to take over the
interests of the sublessee in the pumping plant at its ap-
praised value and also to compensate the sublessee for all
damage ''to crops from said sale.''  A reservation was also
made by appellants of a one-fourth interest in the water of
the well, to be used on any lands they might lease, appellants
to pay their portion of the operating expenses.  It also con-
tained a reciprocal provision that Wilfert was to have a
one-half interest in said well and to bear his portion of the
operating expenses.  Both of said subtenants paid the first
installment of rent in advance.  By the agreed statement
of facts before us it is made to appear that the lease made
to Pedro was a sublease of land held by Potter & Owen under

a lease by them from the heirs of the Bradbury estate; that while in possession under said sublease he was served on the fourteenth day of December, 1921, by the Bradbury estate with a notice that said overlease, or main lease, would be terminated sixty days thereafter and a demand that as a subtenant he surrender possession of said premises within sixty days thereafter, as in said original lease provided; that in pursuance of said notice terminating said lease, the tenant, Pedro, delivered up possession on February 6, 1922, and has not since been in possession of said premises. It was also stipulated that the same situation as above recited existed as to Wilfert, who received a similar notice of the termination of his sublease, and that he surrendered the demised premises to the owners, as provided by the provisions of the main lease, on the sixth day of February, 1922. It is further stipulated that the surrender of possession by Pedro and Wilfert was not voluntary, and that neither waived any rights which he was entitled to under his sublease for damages against appellants. It is agreed that said Pedro and Wilfert, as occupants of said premises under their respective subleases, performed labor and expended money in the preparation of the soil for the planting and harvesting of crops thereon; that Pedro, upon entering into the possession of said premises, paid the sum of $450 on account of rental, and that on the fourteenth day of December, 1921, he was served with notice that his tenancy had been terminated; that between August 15, 1921, and December 14, 1921, he expended the sum of $704.80 in preparing the soil for a future crop. It is agreed that the reasonable value of the work performed by him amounted to $250; also that he expended upon the pumping plant the sum of $215.60 and that the stipulated appraised value of his one-fourth interest in said pumping plant was the sum of $474. It is stipulated and agreed that the foregoing amounts as found by the trial court are correct and fairly represent the value of the services performed and are reasonable appraisements of each item and thing as made by the court. It is agreed that the only question raised upon the Pedro appeal is the right of plaintiff to recover *all* of said amounts as against the appellants Potter and Owen.

Wilfert paid to appellants rental in the sum of $1,012.50, and also expended, in preparing said premises for cultiva-

tion, between the fifteenth day of August, 1921, and the fourteenth day of December, 1921, when notice of termination of his tenancy was served upon him, the sum of $562. It was stipulated that the reasonable value of his personal services during said time was $300, and that he expended upon the pumping plant the sum of $392.03 and that the appraised value of his one-fourth interest in said pumping plant was the sum of $948. It was also stipulated that the value of the services rendered and materials furnished by him as found by the trial court are supported by evidence, and the only question urged upon appeal is as to the liability of defendants for certain charges made against them. It is admitted that said subtenants, Pedro and Wilfert, raised nothing of value on the premises leased by them during their occupancy, and that each was in the exclusive possession of said premises until said surrenders were made, to wit, February 6, 1922, and that said Pedro had planted and attempted to raise certain crops which failed for lack of water prior to said surrender. It is further agreed that Pedro is entitled to recover as against appellants the sum of $474, the stipulated appraised value of his one-fourth interest in the pumping plant installed upon said premises. Appellants contend that the following items allowed by the court are not recoverable in the action: rent, $450; work and labor, $704.80; personal supervision of cultivation, $250, and $215.60 expended upon the pumping plant. The correctness of the items, as such, is not disputed. As to Wilfert, it is agreed that he is entitled to recover the sum of $948, the appraised value of his one-fourth interest in the pumping plant, but appellants dispute his right to recover the following sums: $1,012.50, rent paid in advance; $562, work and labor; $300, personal supervision of the work and labor performed upon said premises, and $392.03 expended upon the pumping plant. The correctness of said items, as such, is likewise admitted. Finally, "it is stipulated and agreed that the questions to be decided by the appellate court are the proper construction of the terms and provisions of the sublease under which the said tenants took possession, and of the main lease from the owners of the said premises to the defendants, Potter & Owen, and whether or not the plaintiffs should recover from the defendants the respective amounts awarded by the court, all of which amounts were expended

in good faith by the plaintiffs in each action, in expectation of recouping the said expenditures from the , crops which would have been planted upon the demised premises if the notice to terminate their respective subleases had not been given.''

The total amount of the Wilfert judgment was $3,214.53 and the Pedro judgment was $2,094.40. The original lease, subleases, and notice to surrender possession are set out *in haec verba* in the complaint and are found by the court to be true. The labor, for which compensation was allowed in each case, was found by the court to have been properly and necessarily performed in order to· plant and harvest crops upon the respective demised premises, and the amounts expended upon the pumping plant were found to have been a necessary and proper expenditure of moneys. The court further found that there was not sufficient time between the date of said subleases and the termination thereof for plaintiffs to have matured crops upon the demised premises, and no crops were in fact harvested therefrom, and the use of said premises during the period of occupancy by said subtenants—August 15, 1921, to February 6, 1922—was merely nominal and of no value to the respective occupants.

[1] The important question raised in these cases is whether the following clause contained in the subleases, ''This lease is made subject to the conditions of the lease ·of this property from the Bradbury Estate to parties of the first part,'' can be construed as incorporating by reference into said subleases the clause contained in the original lease by which it is claimed a covenant was created to apportion rent in case the original lease be terminated, to wit, ''by paying to the lessees all loss and damage occasioned thereby.'' We do not think that it can be so construed. No inference arises from the use of the clause ''this lease is made subject to the *conditions* óf the lease of this property from the Bradbury Estate'' that it was intended thereby to incorporate and make all of the stipulations and agreements of the Bradbury lease a part of said subleases. [2] The term ''condition'' has a well-understood meaning in law when used with reference to estates. ''A 'condition' is a qualification or restriction annexed to a conveyance of lands whereby it is provided that in case a particular event does or does not happen or in case the grantor or grantees do or omit to do a particu-

lar act, an estate shall commence, be enlarged or be de-
feated." (2 Words and Phrases, 1394; *Anderson* v. *Palla-
dine*, 39 Cal. App. 256 [178 Pac. 553]; *Matter of Russell*,
163 Cal. 668 [Ann. Cas. 1914A, 152, 126 Pac. 875].) "In
its more extended sense the word 'condition' signifies a
clause in a. contract or agreement which has for its object
the suspension, rescission or modification of the principal
obligation, or, in case of a will, to suspend, revoke or modify
the devise or bequest." As tersely defined by this court in
the *Matter of Russell, supra,* "In law, it [condition] means
'a qualification, restriction or limitation modifying or destroy-
ing the original act with which it is connected,' or defeating,
terminating or enlarging an estate granted." (1 Bouvier's
Dictionary, 382.) It will be found upon an examination of
said subleases that the only language contained therein upon
which respondents may at all rely in support of the claim
that they are entitled to an apportionment of rentals paid
is a clause which has reference solely to the happening of the
event which would destroy respondents' leasehold interest.
It will further be noted that damages which were likely to
accrue to the subtenants from a number of causes in the
event that the Bradbury estate exercised its option to ter-
minate the original lease were *ex industria* provided against,
but the right of an apportionment of the rentals was not in-
cluded therein. We are not at liberty to reform said in-
struments, as no such relief was sought in the court below,
and we cannot say from an inspection of said instruments
that the parties thereto, at the time of execution, failed
to express themselves fully upon all subjects which they
regarded as important to themselves. The termination of
the subleases was certainly within the contemplation of all
the parties to the transactions. It is not claimed that the
termination of respondents' leasehold interests was occa-
sioned by the fault of appellants. It cannot be claimed that
the respondents did not have notice of the fact that the lease-
hold estate which they accepted was subject, upon notice
given, to termination at the will of said grantors. They
would be estopped by the recitals and covenants which they
signed and sealed with their own hands to deny the existence
of the conditions set out in said original lease. The rule
of law which governs this precise situation is stated in

*Georgeous* v. *Lewis*, 20 Cal. App. 255 [128 Pac. 768], as follows:

[3] "It is the duty of a person contracting for a sublease to ascertain the provisions of the original lease; and a subtenant is charged with notice of the existence of the original lease, and is bound by its terms and conditions. (1 Wood's Landlord and Tenant, sec. 93, p. 184; Jones on Landlord and Tenant, sec. 455; *Blachford* v. *Frenzer*, 44 Neb. 829 [62 N. W. 1101]; *Dunn* v. *Barton*, 16 Fla. 765.)

"But even if this were not so, the clause contained in the sublease under consideration that it was 'to hold only to the conditions of the original lease' was actual notice to the plaintiff of the existence of the original lease; and knowing of its existence he was charged with knowledge of its covenants, conditions, and limitations which, by reference, were made a material part of the terms and conditions of the sublease. (*Coalinga etc. Co.* v. *Associated Oil Co.*, 16 Cal. App. 361 [116 Pac 1107]; *Brock* v. *Desmond & Co.*, 154 Ala. 634 [129 Am. St. Rep. 71, 45 South. 665].)

"The expressed covenants of the original and sublease are obviously opposed to the existence of an implied covenant which was to endure beyond the term granted to the defendants by the original lease."

[4] It is appellants' contention that a lessee cannot recover back from his lessor rent paid in advance. In the instant cases the tenants occupied the demised premises covered by the advance payment for the full six-month period, less seven or eight days. There is no escaping the conclusion that the sublessees had actual notice of the existence of the covenants and conditions contained in the original lease in the face of the fact that they rely upon the language of their subleases as expressly incorporating therein the terms, covenants and provisions of the original lease. It must be held, therefore, that the sublessees had full knowledge that the tenancy of the sublessor was dependent upon the will of the overlord and that they had taken subject to the will of the overlord, and, further, expressly agreed to a termination of their leases in the event of the sale of the premises by the overlord, a contingency which was likely to and which in fact did happen. The subleases, while providing for the recoupment of moneys paid out for certain improvements made by the tenants, contain no covenants for

the recovery of rent paid in advance in case the estate of said subtenants be terminated before the expiration of the full term.   The wisdom of such a contract is not a matter for our determination.   Nevertheless, it is conceivable that with all the facts that were within the knowledge of the sublessees such a contract may have appeared to be to the advantage of said sublessees and that it was intended to be, as it was made, without the insertion of a clause covenanting for a repayment or apportionment of rent paid in advance.

[5] It is a general rule in this state, as at common law, that a tenant who, after the beginning of the term, is deprived of the beneficial enjoyment of the leased premises by inevitable casualty, happening without the fault of either the landlord or tenant, would not be entitled to an apportionment of rent in the absence of any covenant in the lease so providing. (*C. M. Staub Shoe Co.* v. *Byrne,* 169 Cal. 122 [145 Pac. 1032]; *Harvey* v. *Weisbaum,* 159 Cal. 265 [Ann. Cas. 1912B, 1115, 33 L. R. A. (N. S.) 540, 113 Pac. 656]; *Meck* v. *Cunha,* 8 Cal. App. 98 [98 Pac. 107]; 15 Cal. Jur. 721.)   The destruction of the premises by fire furnishes the most common illustration of the rule.   In such a case courts have refused to apportion rent after destruction of the leased premises by fire, flood, etc., assigning, among other reasons, that as neither the lessor nor lessee is responsible for the destruction of the property, it is but equitable to divide the losses, or, put in another form, as the lessor must lose the property, the lessee should lose the term.   But the reason of the rule does not rest solely upon the equitable principle of the division of losses occasioned by inevitable casualty.   Other reasons of the rule take into consideration the law of contracts and the fundamental principles that govern leasehold estates.   As an illustration, the lease is held to be an interest in real estate passing from the lessor to the lessee.   The consideration for the advance payment is not only the use of the premises, but the conveyance by way of lease and the obtaining possession of the premises.   It is further illustrated thus: The fact that rent was to be paid in advance might have been the controlling factor in the mind of the lessor when he executed the lease and delivered the possession of the premises to the lessee; in many cases the landlord may have expended more money than the advance rent, and for the very reason that he is receiving

rent in advance, it may have been the very inducement to
the lease.  Again it is said: ''The lessee has only paid the
money he agreed to pay at the time he agreed to pay it; and
as he has not seen fit to have any provision inserted in the
lease as to the recovery of the advance rent, or a part
thereof, in case the premises are destroyed by fire, the law
will not insert such provision for him, particularly as in
many cases it might work a great hardship on the lessor.''
We cannot say that the principles of law announced in cases
where the destruction of the premises was caused by fire are
not or should not be applicable in a general sense to a case
where a sublessee who has been deprived of the enjoyment
of the leasehold estate without the fault of the sublessor
but by the happening of an event which the sublessee ex-
pressly stipulated that if it should happen would put an
end to his lease, and who made no provision for a return
of rent paid in advance in such event.  Tiffany, in his work
on Landlord and Tenant (volume 1, page 1099), thus states
the rule:

''In cases in which the loss of possession is due to the
stipulations of the lease he [tenant] may lose his advance
payment, but this is merely a natural and legal result of
the stipulation for payment in advance.  One who agrees
to pay in advance cannot well complain if, as a result of the
agreement, he is in a position different from that in which
he would be had he not so agreed.''

[6]  No question of damages for the breach of an implied
covenant of quiet enjoyment and possession of the demised
premises arises, or could arise in this case by force of section
1927 of the Civil Code, as the subleases made provision for
a disturbance of the sublessees' possession, and the complaint
does not contain a single allegation sounding in breach of
covenant for quiet enjoyment and possession.  Respondents,
in their brief, emphatically repudiate the claim that the ac-
tion is brought under the provisions of section 1927 of the
Civil Code, as the following language makes plain: ''In
the case at bar the plaintiffs are not *being sued* [suing]
for a failure to pay rent due prior to an eviction, but are
seeking a recovery of rent paid in advance under an *express
covenant* of indemnity against loss occasioned by the exercise
of the option of the owners of the land to terminate the
tenancy.''  (Italics supplied.)  If, therefore, no express

covenant is to be found in the subleases, which we hold there is not, the question of the right to recover said advance rent is lost so far as the present action is concerned.

*Baranov* v. *Scudder,* 177 Cal. 458 [170 Pac. 1122], contains nothing in conflict with the particular point involved in this case, but is in affirmance of it. That case approves what was said in *Georgeous* v. *Lewis, supra,* to the effect that as the sublessee knew that his sublessor was but a lessee of the owner of the demised premises, he also knew the contents of the lease.

Anything said in the Georgeous case which may be construed as holding that a sublessee, knowing that he is a sublessee, is not under the protection of section 1927 of the Civil Code, against a breach of any condition in the overlease, if no act of omission or commission on the part of the sublessor occasions a breach, is regarded as *dictum* and disapproved. *Baranov* v. *Scudder, supra,* was an action by a sublessee against a sublessor for damages for breach of covenant for quiet enjoyment and possession sustained by the sublessee through eviction by the landlord for a breach of the covenant in the original lease against subletting. The fact that the sublessee knew of such a covenant or was charged with such knowledge, was not deemed sufficient to absolve the lessor from the provisions of section 1927 of the Civil Code. It is there said: "One may agree, in future, to convey property to which he has no title, and the other party to the pact, knowing of the lack, may expect that the day fixed for performance will bring to him that title." Continuing, the argument is, that the sublessee, assuming that he had knowledge of the covenant against subletting, had the right to assume that the sublessor would procure, if not, in fact, that he had already procured, the overlord's consent to the sublease. But that case holds that where the sublease, as in the Georgeous case, and likewise in this case, contained the express provision that it was "to hold to the conditions of the original lease," takes the case without the operation of section 1927. It is said there, as it must be said here, "Scudder [the sublessor] could have readily protected himself against the effects of an eviction such as later resulted to Baranov [the sublessee], by a clause in the sublease, but omitted to do so." Surely, a lease contract may be so written, as in this case, as to take it without the protection of

section 1927 of the Civil Code. We must, therefore, hold that the respondents are not entitled to recover the advance payments of rent in the action as maintained in the court below.

[7] It is next contended that the court erred in allowing damages in the way of expenditures made in preparing the lands for the planting and cultivating of crops and for expenditures made on the pumping plant. As to the first item, as no crops were actually planted, it is claimed, under the provision made for allowing the sublessees "all damage to crops," the labor and time necessarily spent in making the soil ready for the planting of crop, does not constitute damages to crops and, therefore, such expenditures are not recoverable. We think this would be a narrow construction to be placed upon the contract and would result in unjust consequences. The intention of the parties is to be found in the instruments considered as a whole and with reference to the contingencies that were intended to be taken into consideration by the contracting parties. Surely it was not the intention or the understanding of the parties that by the use of the words "damage to crops" the sublessees should be entitled to damages only in the event that they would be compelled to surrender the demised premises at a time when crops were, as it is argued, in a state of maturity and practically ready to be harvested. We think that the contract cannot be so construed. In so holding we are not writing into the contract provisions not found therein but simply placing a reasonable construction upon language therein contained. (Sec. 1643, Civ. Code.) We are not disposed to disturb the judgment of the lower court as to allowances made with respect to moneys expended upon the pumping plant found by the trial court to constitute an element of damage.

[8] The cause is before us on an agreed statement of the case. No fact is disputed or contested, as such. The stipulation of the parties is that this court may construe the contract and place such construction upon it as in law it should receive, allowing or disallowing such items of damages as may appear to be within the intent of the parties thereto. It is very evident that the stipulation was made to avoid a retrial of the action. In making our order we are not called

upon to make new or different findings than those made by the trial court.

It is therefore ordered that the judgment be modified by striking from the judgment awarded respondent Wilfert the sum of $948 and by striking from the judgment awarded Pedro the sum of $450 on account of rents paid in advance by each, and as so modified, said judgments to stand affirmed.

Richards, J., Shenk, J., Lawlor, J., Waste, C. J., and Lennon, J., concurred.