[Civ. No. 10049.   Third Dist.   Mar. 3, 1961.]

LEONARD G. JOHNSON, Respondent, v. ROBERT L. COUCH, Appellant.

Mossman & Ioakimedes, David Freidenrich and Leonard Ware for Appellant.

Johnson & Harmon for Respondent.

WARNE, J. pro. tem.*—The defendant appeals from a judgment entered against him on a jury verdict in favor of plaintiff in an action for fraud and for money had and received.

Stating the facts most favorable to the respondent the record shows: Appellant Couch was an experienced real estate operator in 1953 and had two service stations. That year appellant executed a five-year lease to respondent and one Winkelman on one of the service stations. The lease was upon a mimeographed form prepared for appellant by his own attorney. Parts of the lease were written by hand, among

_____

*Assigned by Chairman of Judicial Council.

which was a provision fixing the rent at one cent per gallon of gasoline to 40,000 gallons, with a $300 minimum and a $500 maximum monthly rent, to be "collected at time of gasoline delivery and taken from the wholesale price," and a provision reading: "This lease subject to all terms & conditions of Hancock Master Lease." These handwritten provisions were dictated by the appellant. This lease was later replaced by an identical lease, predated, between appellant and respondent when Winkelman withdrew as a partner. From the date of this lease, February 25, 1953, through May, 1955, a Mr. Lightle, an independent distributor for Hancock Oil Company, became appellant's agent for collecting the gallonage rental payments. Lightle presented invoices for gasoline delivered which did not itemize the amount included for rent. Collected in rent was 2 cents per gallon rather than the 1 cent called for by respondent's sublease. Lightle remitted 1 cent directly to the appellant and the other to Hancock Oil Company to apply on an obligation of the appellant to that company. Any overage was returned to appellant. Concerning these transactions appellant, on cross-examination, testified: "Q. And at the commencement of the lease with Mr. Johnson, Mr. Lightle, who was the distributor of gasoline, collected two cents per gallon for each gallon delivered there for you; did he not? A. That is right; yes, sir. Q. And he remitted one cent per gallon to you direct? A. That is right. Q. And he paid the other cent to the Hancock Oil Company for your account? A. That is right; yes, sir. Q. Now, the Hancock Oil Company applied the money on your note; is that right? A. That is right. Q. And any balance there was left out of each check would be paid by the Hancock Oil Company to you? A. That is right, yes." Neither respondent nor Winkelman knew that the two-cent collection was being made. It was their understanding, and neither Couch nor Lightle told them otherwise, that the invoices included only the 1 cent per gallon called for by their sublease. They testified that they would not have signed the lease had the rental been 2 cents per gallon.

In June, 1955, Hancock Oil Company took over deliveries of gasoline to the station itself and acted as appellant's agent for collection. At this time the invoices for the first time showed rental charges. The June invoices from Hancock Oil Company showed a 2-cent rental charge and respondent testified that he immediately called the Oakland office of the oil company and asked for an explanation. He was told by an

employee (Kelly) that 1 cent of the charge was rental and that he (Kelly) would check up on the other. Later Kelly told respondent that 1 cent was rental and the other 1 cent of the 2-cent charge was just a bookkeeping entry between Hancock Oil Company and Couch which did not affect him, and that the total price he was being charged was the same as Lightle had charged. Respondent testified that he was fairly content when he checked and found he was not paying any more than he had to Lightle. However, at that time he did not know that Lightle had been collecting 2 cents per gallon for rental. A short time later respondent was told by Kelly that Hancock Oil Company would no longer collect for Couch and that he, respondent, should pay appellant directly instead of paying on delivery of the gasoline. The succeeding invoices showed a 1-cent rental charge, and respondent again took the matter up with Kelly who told him that it was just a "wash transaction" between Hancock Oil Company and Couch. At that time Kelly knew that respondent had started to pay the 1-cent rental directly to the appellant.

Respondent continued to pay 1-cent rental directly to Couch and the other 1 cent directly to the Hancock Oil Company until late in the fall of 1957 when Hancock's field man, a Mr. Dunn, told respondent his rental was actually 2 cents. This was incident to Hancock Oil Company reverting to the 2-cent charge. Respondent investigated and stopped paying any rent directly to Couch but continued to pay the charges for gasoline delivered. He consulted an attorney in December 1957, but it was not until February 1958 that he actually knew there was an overcharge.

The gallonage sold justified a rent payment in excess of $300 (the minimum set) in only two months of the entire term of the lease. Appellant periodically collected a purported shortage between one cent per gallon and the $300 per month minimum. Therefore the actual total collected at 2 cents per gallon, plus the extra amount paid to appellant, exceeded the minimum monthly payment in 56 months and exceeded the maximum rental of $500 per month in 15 months of the term.

Appellant first contends that there was no evidence of fraud as charged in the complaint. He argues that the only fraud charged was the collection of more rental than was provided for by concealing the actual amount of rent collected and that Lightle and Hancock, not appellant, collected the rent. Appellant contends that since no conspiracy was charged or proved, and since no concealment or misrepresentation by

Couch, the appellant, was shown, the evidence does not support the jury's implied finding of fraud. In support of his contention that there was no concealment on his part he claims Lightle and Hancock Oil Company were independent contractors. However he testified that they were his agents for collection. Whether a coconspirator or not, the Lightle invoices concealed the amount of rent being paid, and this amount was admittedly 2 cents per gallon. The evidence amply supports the jury's implied finding that Couch authorized this collection and later ratified Lightle's act by accepting the payments as rent. The same might be said for Hancock Oil Company. Furthermore, Couch himself collected the purported deficiencies between 1 cent per gallon and the $300-per-month minimum and never mentioned the 2-cent charge. Couch also knew of the overcharge, yet failed to mention it, and thus by actively collecting the purported deficiency he contributed to the concealment of the rental payments actually made. Such conduct constitutes actual fraud. (Civ. Code, § 1572, subds. 3 and 5.)

Appellant next contends that the trial court erred in determining as a matter of law and instructing the jury that the lease fixed the rental at 1 cent per gallon of gasoline delivered each month and set a minimum rental of $300 per month and a maximum of $500 per month. Appellant argues that the provision in the sublease reading "This lease subject to all terms & conditions of the Hancock Master Lease" raised an ambiguity in the meaning of the lease which resolved itself into a question of fact which should have gone to the jury. We do not agree with appellant. Here we are concerned with a sublease and not an assignment of the lease. The general rule is that every sublease is subject to the terms and conditions of the master lease. (*Georgeous* v. *Lewis,* 20 Cal.App. 255 [128 P. 768]; *Pedro* v. *Potter,* 197 Cal. 751 [242 P. 926, 42 A.L.R. 1165]; *Agoure* v. *Plummer,* 175 Cal. 543 [166 P. 311].) The addition of the provision, "This lease subject to all terms & conditions of the Hancock Master Lease," merely states the rule of law. "The sublessee is not in privity of contract with the head landlord, since there are no contractual relations between them, and he is not in privity of estate with him, since there is no relation of tenancy between them and he merely holds possession for the lessee." (1 Tiffany, Real Property [3d ed.], § 124.) It is clear that the addition of the provision created no contractual duty to the landlord, Hancock Oil Company. Nor can the provision

"subject to all terms & conditions of the Hancock Master Lease" possibly be construed to create a contractual duty on the part of the respondent to pay directly to appellant 1 cent per gallon on gasoline delivered in addition to the 1 cent clearly stated in the sublease. In *Englestein* v. *Mintz*, 345 Ill. 48 [177 N.E. 746, 747], a contract to purchase real estate was involved and also a resale of a half interest to a third party which was subject to an agreement entered into between the purchaser and the party purchasing the other half interest. In response to the contention that the words "subject to" were uncertain and ambiguous and that the intention of the parties disclosed that there was to be a personal assumption of the obligation, the court said at page 752: " '[I]t is the duty of a party who intends by a deed to bind another by a covenant in a former formal instrument to insert such covenant in the deed in such distinct and intelligible terms as that the party to be bound cannot be deceived, and not call upon the courts to infer such a covenant from equivocal words, which were probably understood by one party in a sense different from that sought to be ascribed. . . . The assignee always takes the estate cum onere,—that is, he takes and holds it subject to the agreements agreed to be performed by the lessee,—and it is difficult to perceive why, upon sound legal principle, the mere expression of this legal implication should create a personal contractual obligation which the legal implication itself would not create.' " (See also *Shell Oil Co.* v. *Manley Oil Corp.*, 124 F.2d 714; *Byrne* v. *Drain*, 127 Cal. 663 [60 P. 433].) In the instant case there is no claim that both parties expected a different construction on the "subject to" clause. Even if it be a fact that Couch expected a different construction, that fact would not be sufficient to justify the application of an unusual construction of the language.

Appellant next contends that the trial court erred in failing to give four of his proposed instructions. There is no merit in this contention. Suffice it to say that all of these instructions were based upon appellant's assumption and contention that an ambiguity existed in the sublease. Since we have determined that there was no ambiguity in the sublease, it follows that the proposed instructions were not applicable to the case and therefore were properly refused.

Appellant next contends that the fraud, if any, was discovered by the respondent not later than June 1955. However he does not maintain that the statute of limitations would

completely bar the action since it is admitted that the three-year statute of limitations is applicable to actions based upon fraud. (Code Civ. Proc., § 338, subd. 4.) The action was commenced May 6, 1958. Appellant contends that respondent knew he was paying 2 cents per gallon rental in June 1955, and did not complain, hence he cannot recover for any period after that date. Appellant also contends that respondent by his actions waived the fraud. This contention is also based upon the assumption that the respondent had notice before the fall of 1957 of the rental he was actually paying. Since the two contentions are similar we will treat them together.

These contentions are contrary to the evidence. Respondent testified that he never knew of the true amounts paid until the fall of 1957. There was evidence that the Lightle invoices never showed the amount paid as rent, and appellant was justified in assuming that he was not being overcharged. The Hancock Oil Company invoices showed 2 cents as rental, but Kelly, Hancock Oil Company's representative, denied that 2 cents was actually being taken as rental. He stated that 1 cent was rent and the other a "bookkeeping entry" or a "wash transaction" between Hancock Oil Company and Couch. These false statements had the effect of reasonably misleading the respondent. Rebates given to the respondent by Couch or Hancock Oil Company in no way would give respondent knowledge of the overcharge. We find no merit in either contention.

Lastly, appellant contends that the trial court erred in admitting hearsay testimony. This contention is directed to the testimony of respondent in relation to his telephone conversation with Kelly concerning the first invoice which contained a 2-cent charge for rent. Johnson testified: "A. Well, when I received the invoice I wondered what this two cents rental was as shown. So, I immediately called the company in Oakland and asked for an explanation. Q. Whom did you talk to there? A. Mr. Kelly. Q. He informed——." Here an objection was made that the question called for hearsay testimony but was overruled. Later, and after testimony that Kelly called him to say Hancock Oil Company would not collect for Couch any more, the defendant again objected on the ground of hearsay, contending that the agency had terminated. The objection was temporarily sustained. But when the question was again asked, after further foundation, the objection was not renewed, nor was it renewed as to any of the other conversations with Kelly, all of which pertain to the rental charge;

694

nor was an objection interposed when respondent's wife testified to what Kelly had stated. The record shows that at the time these conversations were held Hancock Oil Company was the admitted agent of Couch and that Kelly, an employee of Hancock Oil Company, explained what the charges were to respondent. This testimony was pertinent to show respondent's lack of knowledge. "When it is proved that D made a statement to X, with the purpose of showing, circumstantially, the probable state of mind of X, such as notice, knowledge, or motive, or to show the information which X had as bearing on the reasonableness or good faith of the subsequent conduct of X, the evidence is not subject to attack as hearsay. . . . Its value for these purposes does not depend on the truth of the statement." (McCormick on Evidence [1954 ed.], pp. 464-465; see also *Walker* v. *City of San Gabriel*, 20 Cal.2d 879, 882 [129 P.2d 349, 142 A.L.R. 1383].)

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied March 29, 1961, and appellant's petition for a hearing by the Supreme Court was denied April 26, 1961.