[Civ. No. 26434.   Second Dist., Div. Four.   Dec. 18, 1962.]

IVAN  SCOTT  et  al., Plaintiffs  and  Respondents,  v.
CLARENCE R. MULLINS, Defendant and Appellant.

James A. Miller for Defendant and Appellant.

No appearance for Plaintiffs and Respondents.

BURKE, P. J.—This is an action for declaratory relief. Plaintiffs, assignees of a sublessee, seek to establish their right to recover prepaid rent against the sublessor and the sublessor's assignee. The matter was tried by the judge alone upon a stipulation of facts and documentary exhibits. Judgment was in favor of plaintiff against defendant sublessor but in favor of the sublessor's assignees.

The court found the facts to be substantially as follows: In June 1951 defendant Mullins, as lessee of certain real property, executed a sublease thereon to Phillip Kay and Robert Mason. Kay and Mason built a restaurant on the

property. In December 1953 Mullins conveyed the master lease and assigned his interest in the sublease to defendants David and Pearl Rosen. The Rosens and the owner thereafter mutually rescinded the original master lease and entered into a new master lease covering more property and extending the original term. The new lease was executed in September 1956, but the original sublease remained in force. *(Bailey* v. *Richardson,* 66 Cal. 416, 421-422 [5 P. 910] [Lessee may not, by surrendering his estate to the landlord, destroy the rights of a sublessee under a sublease].)

Kay and Mason continued in possession of the property held under the sublease until April 12, 1957, at which time plaintiffs entered and took possession pursuant to a contract with Kay and Mason for sale of the restaurant and assignment of the sublease. Part of the consideration paid by plaintiffs for assignment of the sublease was $2,200 which represented advance rental paid under the original sublease by Mason and Kay to Mullins. The advance rental was for the period between August 1, 1960, and June 30, 1961. The agreement of sale from Mason and Kay to plaintiffs was dated April 26, 1957. It expressly preserved the advance rental payment and related covenants in favor of plaintiffs as assignees.

The court further found that on or about April 22, 1957, the owners of the property served a three-day notice to pay rent or quit on the Rosens as lessees under the master lease. Thereafter, an unlawful detainer action was brought against the Rosens and a keeper was placed on the property. The Rosens vacated the premises and plaintiffs were advised by mail to pay rent directly to the owner.

On or about May 17, 1957, the owner entered into a new master lease, covering the property embraced in the Rosen master lease, with Charles J. and Julie T. Kalish. The Kalishes notified plaintiffs of the new master lease and demanded execution of a new sublease. Plaintiffs, in December 1957 entered into a new sublease with the Kalishes which called for a higher rental. The Kalishes refused to give credit for the $2,200 rent prepaid by Mason and Kay to Mullins under the original sublease which expressly accrued to plaintiffs under their assignment from Mason and Kay.

Shortly after execution of the new sublease with the Kalishes plaintiffs brought this action asking the court to declare their rights under the original sublease as respects the $2,200 advance rental. The original sublease provided: ''If this

lease be terminated prior to the expiration of the full term thereof as herein specified without fault on the part of lessee, and if lessee be not then in default hereunder, then, upon surrender by lessee of the demised premises, lessor will pay to lessee, in case of such termination and surrender prior to July 1, 1960, the sum of Twenty-Two-Hundred Dollars ($2,200.00), or, in case of such termination and surrender on or subsequent to July 1, 1960, an amount equivalent to the rental hereunder for the unexpired portion of the term hereof at the date of such termination and surrender, calculated at a daily rate based on the regular monthly rate.''

The trial court found that the several transactions concerning the master leases set out above did not work a forfeiture or termination of the sublease and that plaintiffs voluntarily elected to terminate said sublease and enter into a new sublease with the Kalishes. However, the court further found that under the above-quoted provision of the first sublease plaintiffs were entitled to recover the advance rental payment from defendant Mullins, the original sublessor, but not against the Rosens as assignees of the sublessor's interest. The court's distinction between Mullins and the Rosens was based on evidence indicating that the prepaid rental was not transferred to the Rosens at the time the original master lease and sublease were assigned to them by Mullins.

On this appeal only Mullins has filed a brief. He asserts several bases upon which the judgment against him should be reversed or, in the alternative, should be reversed as to the Rosens. After reviewing the stipulated facts and documentary evidence, we have concluded that the judgment must be sustained.

Where rent is paid in advance a lawful surrender or termination of the leasehold estate does not entitle the lessee to a rebate. But this well-settled rule is qualified to permit recovery of advance rental where such recovery is expressly provided for in the lease. *(Friedman* v. *Isenbruck,* 111 Cal. App.2d 326, 335 [244 P.2d 718]; *Hindin* v. *Caine,* 104 Cal. App.2d 238 [231 P.2d 83].) Therefore, under the provision of the original sublease in issue here, which is set out above, if the termination is without fault of the sublessee he is entitled to recover prepaid rent ''upon surrender . . . of the demised premises.''

The trial court's conclusion that forfeiture of the Rosens' head lease for failure to pay rent did not work a termination of the sublease is contrary to the rule established in this

state. ▉ The general rule is stated in 32 Am.Jur. 344, quoted in *Herman* v. *Campbell*, 86 Cal.App.2d 762, 765-766 [195 P.2d 801], as follows: " 'The right of the sublessee to the possession of the premises as against the original lessor terminates with the lease or term of the original lessee, and since a subtenant holds the premises subject to the performance of the terms and conditions impressed upon the estate by the provisions of the original lease, his rights are generally held to be terminated when the original lessor declares a forfeiture of the original lessee's term based upon the latter's nonperformance of obligations imposed on him. Thus, if the original tenant has incurred a forfeiture of his lease, and for that reason the landlord annuls the lease, the landlord is entitled to the possession as against the sublessee.' " Thus, forfeiture of the master lease terminated any rights of plaintiffs as sublessees under the sublease. Their alternatives were to yield up the premises or attorn to the owner. Under these circumstances it cannot be said that plaintiffs' decision to remain in possession was a voluntary relinquishment of rights under the sublease. After the lessee's default they had no rights to relinquish. The termination of the sublease was clearly "without fault of the [sub]lessee."

▉ Similarly, termination of the sublease and acceptance of a new sublease worked a surrender, in law if not in fact, of the demised premises by the sublessee. ▉ A surrender is a yielding up of an estate for life or years to the reversioner or remainderman. A surrender yields the estate as distinguished from the possession and can be accomplished by express consent of the parties in writing, or by operation of law when the parties do something which implies they have consented. ▉ Acceptance of a new lease by the tenant is an effective surrender, by operation of law, of the premises demised in the original sublease. (See *Triest & Co.* v. *Goldstone*, 173 Cal. 240 243 [159 P. 715]; *Welcome* v. *Hess*, 90 Cal. 507 [27 P. 369, 25 Am.St.Rep. 145].) ▉ Therefore, plaintiffs, as assignees of the sublease, are entitled to recover advance rental payments pursuant to the covenant in the lease, the benefit of which was expressly transferred to them by the assignment from Mason and Kay.

▉ Defendant Mullins' liability upon covenants in the sublease was not terminated by the assignment thereof to the Rosens. The burden of Mullins' obligation could be transferred only with the consent of plaintiffs, the parties entitled to its benefit. (Civ. Code, § 1457; *Britschgi* v. *McCall*, 41

Cal.2d 138, 144 [257 P.2d 977].) Plaintiffs did not consent to relieve Mullins of obligations in the sublease. Therefore, the latter remains liable to perform the obligations therein notwithstanding his assignment of the sublease to the Rosens.

Defendant Mullins contends the court erred in finding that plaintiffs were not guilty of neglect in failing to ascertain the sufficiency of the Rosens' performance under the head lease at the time plaintiffs accepted assignment of the sublease. He concludes that since an investigation would have revealed the Rosens' default in payment of rent reserved under the master lease, that circumstance would have caused plaintiffs to reject the transaction, and by entering into it they assumed the risks entailed in the Rosens' prior delinquency. We fail, however, to perceive any pertinency in this argument. ■ The cases cited upon the point hold that a sublessee is charged with notice of the provisions in the master lease and may not exert any greater right under the sublease. (*Baranov* v. *Scudder*, 177 Cal. 458 [170 P. 1122] ; *Pedro* v. *Potter*, 197 Cal. 751 [242 P. 926, 42 A.L.R. 1165].) In *Baranov*, a clause in the master lease prohibited subletting. The court held a sublessee, who knows his lessor is himself only a lessee of the property, is charged with knowledge of contents of the master lease including the covenant against subletting. In *Pedro*, the court held a sublessee charged with knowledge of a clause in the master lease which provided that the tenancy could be terminated on 60 days' notice. In the absence of a provision to the contrary in the sublease, the court further held the sublessee not entitled to recover advance rental payments where the master lease was terminated in accordance with its provisions.

■ Neither *Baranov* nor *Pedro* support the proposition that default by the main lessee under a master lease excuses performance of covenants in the sublease which are consistent with the master lease, nor that an assignee of a sublease is estopped from bringing an action on the sublease where the head lessee is in default at the time of the assignment. The right of Mason and Kay as original sublessees to recovery of prepaid rent would not be defeated by default on the head lease; to the contrary, such default would invoke the apportionment clause. Plaintiffs, as assignees of Mason and Kay, are equally entitled to receive the benefit of the covenant.

Defendant Mullins argues that in any event the Rosens should also be held on this covenant.

■ The grantee of a lessee's reversion in property

sublet by the original lessee cannot be held to perform the sublessor's obligations under the sublease in the absence of a contractual assumption of those obligations *(Gregers* v. *Peterson Ice Cream Co., Inc.,* 158 Cal.App.2d 746, 751 [323 P.2d 572]), or breach of a duty imposed by a covenant running with the land. (See Civ. Code, § 1460; *Cicinelli* v. *Iwasaki,* 170 Cal.App.2d 58, 65 [338 P.2d 1005].)

Neither basis for imposing liability is urged by Mullins, as well he could not. The sole reason stated for his position here is that the basis of the trial court's decision exonerating the Rosens, i.e. there was no transfer of the advance rental payment to the Rosens with the assignment of Mullin's interests to them, is erroneous.

In the absence of agreement, the grantee of a sublessor's reversion has no claim upon rentals prepaid by the sublessee *(Pike* v. *Psihogios,* 68 Cal.App. 145, 147 [228 P. 722]), and whatever consideration the sublessor and his assignee agree upon for the transfer has no bearing on a sublessee's right to enforce covenants in the sublease. An agreement to assume the obligations of the sublessor is the necessary prerequisite to enforcement of this covenant against the Rosens. Neither has an assumption agreement been alleged or proved, nor any other basis of liability suggested. The manner in which the parties treated the actual fund prepaid is immaterial and the same is true of the manner in which the trial court reached the correct conclusion. "In other words, it is judicial action, and not judicial reasoning or argument which is the subject of review; and, if the former be correct we are not concerned with the faults of the latter." *(Davey* v. *Southern Pac. Co.,* 116 Cal. 325, 330 [48 P. 117].)

Judgment affirmed.

Jefferson, J., and Ford, J.,* concurred.

*Assigned by Chairman of Judicial Council.