[No. G008315. Fourth Dist., Div. Three. Oct. 23, 1990.]

LAWRENCE W. SIMON, Plaintiff and Appellant, v.
DENNY R. STEELMAN, Defendant and Respondent.

**COUNSEL**

Greenbaum & Ferentz and Martin B. Greenbaum for Plaintiff and Appellant.

W. Patrick O'Keefe, Jr., for Defendant and Respondent.

OPINION

SONENSHINE, J.—Lawrence W. Simon appeals a judgment after an order denying him standing to bring an action for involuntary dissolution of a corporation. (Corp. Code, § 1800, subd. (a).)

I

Lawrence W. Simon and Denny R. Steelman jointly incorporated Action Electric, Inc., (Action) on June 4, 1979. Each man owned 50 percent of the corporate stock, and each served as an officer and director of the corporation.

In April 1986, Simon was named as a defendant in a paternity case. Not wanting his assets to be available and subject to levy, Simon contacted Action's corporate attorney regarding transferring his corporate shares to Steelman.

The attorney testified Simon "indicated . . . he did not want to appear on the records of the corporation as a shareholder and that he wanted to transfer his shares to . . . Steelman." He explained he believed Simon wished to immediately divest himself of any stock ownership. Simon asked the lawyer to backdate the documents a couple of months. He obliged but only by one day. Later, Simon told Steelman he "would rather [Steelman] have the business than that miserable bitch get a dime."[1]

The attorney prepared transfer papers, including a new stock certificate (certificate No. 3) naming Steelman as sole shareholder. He drew a line across Simon's original 50 percent share certificate (certificate No. 2) and wrote "cancelled" on it. The transfer papers were forwarded to Simon for his and Steelman's signatures. Simon received certificate No. 3, but he neither signed it nor showed it to Steelman. In June 1986, the attorney wrote to Simon inquiring about the certificate. He received no reply.

In December, Simon testified in the child support phase of the paternity suit. He indicated he "did not own any interest [in Action], he was no longer an owner nor a partner, but was a vice president."[2]

---

[1] Simon also contemplated hiding other assets. Simon and Steelman jointly owned some real property in Lake Elsinore. Simon, planning to transfer his 50 percent interest to Steelman, prepared two deeds. The first conveyed his one-half interest to Steelman; the second restored Simon's ownership. Although both were executed, neither was recorded.

[2] The attorney retained in the paternity action testified he advised Simon there was a distinction between owning the company and owning shares of a corporation. Simon was never asked at the paternity hearing whether he was a shareholder.

On June 3, 1987, Steelman terminated Simon's employment. A set of corporate minutes was prepared declaring Steelman to be the sole shareholder of Action.

Simon brought an action for the involuntary dissolution of Action, alleging he still was a shareholder. The trial court disagreed, ordering judgment against him. He appeals.

## II

An action for the involuntary dissolution of a corporation may be commenced only by its directors or shareholders. (Corp. Code, § 1800, subd. (a).) The trial court found, "Simon's intent was to divest himself of any interest in the corporation and that his shares be transferred to Steelman." The court concluded "he had cancelled his shareholder interest in the corporation . . . . The court [found] Plaintiff Simon is not a shareholder."

Simon maintains he only considered transferring the shares but he never did so. He insists he asked the attorney to explain the necessary procedure to transfer the stock so he "could divest himself of title should he choose to do so." He concludes the fact he did not sign the corporate documents sent to him by the lawyer "proves" he did not transfer his shares.

Simon misunderstands our role. He is asking us to set aside a factual determination made by the trial court. "[W]e do not reweigh the evidence on appeal, but rather determine whether, after resolving all conflicts favorably to the prevailing party [citations], and according prevailing parties the benefit of all reasonable inferences [citation], there is substantial evidence to support the judgment." (*Hasson* v. *Ford Motor Co.* (1977) 19 Cal.3d 530, 544 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158].)

Substantial evidence exists to support the trial court's conclusion Simon no longer wished to be a shareholder and he intended for that change to be effective *immediately*. The corporate attorney testified to his telephone conversation with Simon stating Simon said he did not want to be a shareholder. Simon asked him to backdate the corporate records to reflect that Simon had not been a shareholder for over two months. Steelman testified that Simon said it would be better for him (Steelman) to have the stock than the plaintiff in the paternity action. Simon himself testified in that

action that he no longer was an owner.[3] No more is needed. Simon is not a shareholder.

## III

■ Relying on California Uniform Commercial Code section 8309, Simon maintains the shares were never effectively transferred. He argues transfer of a certificated security is complete only upon endorsement and delivery to the transferee. In other words, because neither certificate No. 2 nor certificate No. 3 was delivered to Steelman and since certificate No. 3 was never endorsed, no transfer took place.

The trial court found "the presence of share certificate # 2 in the corporate book with a line written across the face of it and the word cancelled written on it by [the] attorney has effectively accomplished Plaintiff's intent to terminate his shareholder status." The court "was unimpressed by the argument that plaintiff is still a shareholder because he never signed the back side of share certificate # 2 or anything on share certificate # 3." The trial court is correct.

Simon, wanting to immediately divest himself of any interest in the corporation, surrendered his stock. The court found the stock abandoned at the time of Simon's phone call to the lawyer. An actual delivery of the stock to Steelman was unnecessary. Simon surrendered his stock to the corporation; he did not transfer it to Steelman. And, any further endorsement was not needed. Corporations Code section 510, subdivision (a) provides: "When a corporation purchases, redeems, acquires by way of conversion to another class or series, or *otherwise acquires its own shares*, those shares are restored to the status of authorized but unissued shares, unless the articles prohibit the reissuance thereof." (Italics added.)[4] Thus, the statute

---

[3] Simon maintains the trial court erred in admitting this hearsay evidence. But this evidence is not hearsay.

" 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).)

"There is a well-established exception or departure from the hearsay rule applying to cases in which the very fact in controversy is *whether certain things were said* or done and *not* as to *whether* these things were true or false, and in these cases the words or acts are admissible not as hearsay, but as original evidence." (*People* v. *Henry* (1948) 86 Cal.App.2d 785, 789 [195 P.2d 478], italics added.) Such is our situation.

The relevance of Simon's paternity action testimony went to what he said and not to its truth. Whether he was a shareholder was a determination to be made by the trial court.

[4] California Uniform Commercial Code section 8307 provides: "If a certificated security in registered form has been delivered to a purchaser without a necessary indorsement, he or she may become a bona fide purchaser only as of the time the indorsement is supplied; *but against the transferor*, the transfer is complete upon delivery and the purchaser has a specifically

recognizes a corporation's reacquisition of its outstanding shares through surrender by a stockholder. As the trial court concluded, Simon's instructions to the lawyer constructively surrendered the stock.[5]

There is another reason why Simon's argument must fail. "That which ought to have been done is to be regarded as done, in favor of him [or her] to whom, and against him [or her] from whom, performance is due." (Civ. Code, § 3529.) Simon surrendered his stock; his testimony in the paternity action confirmed that. Equity thus provides that that which should have been done to accomplish that end is deemed to have been done.

In *Tognazzi* v. *Wilhelm* (1936) 6 Cal.2d 123 [56 P.2d 1227], a mother conveyed real property to her two daughters to protect against the possibility of a deficiency judgment. The three agreed the property would be returned to the mother upon demand. When one of the daughters refused to abide by the agreement, the mother sued.

Our Supreme Court was unequivocal in its holding. "It is immediately apparent . . . the sole and admitted purpose underlying the transfer of the property . . . was to place the same beyond the reach of a creditor to whom appellant might thereafter become liable . . . . It is well settled that equity will not lend its aid to establish a trust or enforce a contract which is tainted with fraud." (6 Cal.2d at p. 125.)[6]

As the court noted in *Tognazzi*, "the conveyance itself was contrary to public morals and constituted the wrongful act which precludes the interposition of equity on behalf of the fraudulent grantor." (6 Cal.2d at p. 126.) Simon surrendered his stock so that it would not be considered by the court in determining his child support obligation. He cannot be heard to complain.[7]

---

enforceable right to have any necessary indorsement supplied." (Italics added.) Here, "delivery" was established by Simon's request to the corporate attorney, and the attorney's compliance with that request. Thus, Simon's failure to sign and return certificate No. 3 did not prohibit the corporation's reacquisition of his shares.

[5] By analogy, we note surrender of a sublease "can be accomplished by express consent of the parties in writing, or by operation of law when the parties do something which implies they have consented." (*Scott* v. *Mullins* (1962) 211 Cal.App.2d 51, 55 [27 Cal.Rptr. 269].)

[6] "Transactions involving the issue and transfer of securities are governed by statutory provisions and principles of law and equity (including the law relative to . . . estoppel, fraud, misrepresentations or other . . . invalidating causes) to the extent they are not displaced by a particular provision of Division 8." (1 Marsh, Cal. Corporation Law (2d ed. 1987 supp.) § 7.1, p. 332.)

[7] We do not, as the dissent suggests, hold that perjury is a means of conveying property. Rather, we merely affirm the lower court's finding Simon "terminate(d)" his interest in Action.

Judgment affirmed. Respondent to receive costs on appeal.

Moore, Acting P. J., concurred.

**CROSBY, J.,** Dissenting.—There are two ways to look at most disputes. Honest judges will usually admit that, human nature being what it is, it is not possible to expect a court to ignore either of them. They are: (1) strict adherence to applicable law and (2) achievement of a just result, notwithstanding precedent. The majority's solution satisfies neither.

Property, real and personal, can be transferred in a variety of recognized ways. This case will be the first, to my knowledge, where perjury is the vehicle. A possibly salutary addition to our law, to be sure, but I think it should be conceived, if at all, after careful consideration by the Legislature. The next paragraph will illustrate why.

The majority ratifies a windfall to Action Electric, Inc., and Simon's erstwhile partner, Denny R. Steelman. There is no reason to fret over the hardship that may cause perjurer Simon, of course. But wait a minute. Assuming he lost the paternity action, his out-of-wedlock offspring may be the real loser. The majority has eliminated the possibility that any income from Simon's stock could be used to provide a source for support or a writ of execution, if necessary. Steelman, greedy to receive these pennies from heaven, has no legal obligation—and, it seems certain, less inclination—to apply them to the welfare of the fruit of Simon's loins. Some justice, some law.

I dissent from the result and from the decision to publish.